TURNAGE v. KENTON.

(*Jackson.* April 19, 1899.)

1. BOUNDARY. *Calls.*

A call to run with a creek controls a call for course, where the line has not been marked. (*Post, pp. 332, 333.*)

Cases cited and aproved: Blount v. Medlin, 2 Tenn., 199; Hebart v. Scott, 95 Tenn., 467; Massengill v. Boyles, 4 Hum., 206.

2. LIMITATIONS, STATUTE OF. *Adverse possession under color of title.*

Adverse possession for the requisite period of seven years, within the boundaries of a deed describing the land as a single tract, operates to perfect title in the possessor to the entire tract, notwithstanding the lands had been originally granted by the State to different persons and in several tracts. (*Post, pp. 333, 334.*)

Code construed: § 4456 (S.); § 3459 (M. & V.); § 2763 (T. & S.)

Cases cited and approved: Brown v. Johnson, 1 Hum., 261; Ramsey v. Monroe, 3 Sneed, 329; Nelson v. Trigg, 4 Lea, 706.

FROM TIPTON.

Appeal from the Chancery Court of Tipton County. JNO. S. COOPER, Ch.

SANFORD & YOUNG for Turnage.

CHAS. B. SIMONTON & SON for Kenton.

MCFARLAND, Sp. J. This bill was filed on the third of October, 1893, by H. M. Turnage against

T. R. Kenton and N. B. McCormick to recover possession of a tract of ninety-four acres of land, part of an 1,878-acre tract, and to remove cloud from title. The main facts as shown on the record are that on the first of September, 1845, grant No. 1345 was issued from the State of Tennessee to Thomas P. Shelton and Constantine Paine for 300 acres of land in Mississippi bottom, Tipton County, Tennessee, lying northerly and westerly of what was known as Bear Creek and between Old River on the west and Black Branch Lake on the east.

On the nineteenth of November, 1849, A. C. McDonald and wife conveyed to Constantine Paine 1,878 acres of land, which, complainants claim, includes this Shelton and Paine tract and the ninety-four acres in controversy. On the fifteenth of March, 1882, James Paine conveyed to H. M. Turnage this 1,878 acres and Turnage went into immediate possession of same. There was at the time Turnage took possession some 150 to 200 acres cleared of this 1,878 acres, and Turnage cleared up several hundred more acres and having in cultivation between 500 and 600 acres and held continuous possession to the bringing of this suit. .

In 1891, defendants, Thos. R. Kenton and N. B. McCormick, made an entry and survey of the 94 acres in controversy, and on June 3, 1893, procured a grant from the State of Tennessee, and this is the cloud complainant seeks to remove. There is no deraignment. of title of this 94 acres by com-

plainant, except by showing the grant to Sheldon and Paine to the 300 acres, and the deed from James Paine to complainant of 1,878 acres, including this 300 acres, in 1882. The contention of the complainant is that this 94 acres is part of the grant of 1,345 acres to Sheldon and Paine, and a part of the 1,878 acres included in the deed from Paine to complainant; that having shown grant to the tract in controversy, and then shown deed to him of same, the other lands to the aggregate amount of 1,878 acres is included, recorded in 1882, and then shown actual inclosure, occupation, and cultivation of a part of the 1,878 acre tract, from 1882, to filing bill in 1893, more than seven years, he sufficiently deraigns his title. The contention of the defendant is that the possession and occupancy of a part of the 1,878 acres, which lay outside the 300-acre grant; cannot be coupled with the grant so as to ·perfect his title to that part of the grant, though both are included in the deed to 1,878 acres. In other words, that complainants must not only show a grant to the 300 acres, but must also show actual occupancy and possession of a part of this 300 acres so granted under color of title to himself, in order to claim benefit of seven years' statute, which, under the authorities, gives title to the whole land described in muniment of title, where only a part is occupied for the seven years. The first contention of defendant is that this 94 acres is not

included in either the grant to the 300 acres or the deed from Paine to Turnage of the 1,878 acres.

This is a question of fact, to be determined by the proof, and necessitated the reading and study of this voluminous record of over 400 pages.

The grant to this 300 acres, beginning on the bank of Old River, runs east to a defined point, thence south 60 poles to a stake, thence in a south-westerly direction with the meanderings of said lake to Bear Creek, thence west with the meanders of said creek to Old River, etc.

The two deeds from McDonald to Constantine Paine in 1849, and from James Paine to Turnage in 1882 of the 1,878 acres, have for their southern boundaries this 300 acres, being the southern part of the 1,878 acres, substantially the same calls. Recent surveys of this southern portion of these tracts, especially the survey made by J. A. Green, county surveyor, made in 1887, seems to show that from the point 60 poles from the cottonwood the meanderings of the lake are first in a southwesterly direction around the foot of the lake, thence for some distance ·in a southeasterly direction to what is now known as Bear Creek, and that this Bear Creek runs in a southern slightly eastern direction to Old River.

The defendants claim that when this grant of the 300 acres was made, in 1845, there was a creek called Bear Creek which did run westerly from the lake to Old River, as called for in the grant, and

that between this, the northern creek, and the one now called Bear Creek, on the south, lay the 94 acres they entered. They claim that by many years of overflow and other natural causes this northern creek has been filled up, until it is now a mere depression though plainly visible.

There was much proof taken on both sides, and there was some contradictions of fact. It is sufficient to say of this proof that it clearly appears that the whole of this 300 acres to the present Bear Creek, including the 94 acres in controversy, has always been known as the Paine and then Turnage land; that Turnage so claimed to Kenton before Kenton's entry, and that the present Bear Creek has always been known as such, and this testified to by the most reliable, by reason of better acquaintance with facts, of defendant's witnesses as well as complainant's.

It also, we think, satisfactorily appears that what is now claimed to be the old bed of Bear Creek, and which defendants claim was the southern boundary of 300-acre grant, was never the Bear Creek called for in this entry and grant, but was a mere slough, through which the water ran from the lake to Old River during high water.

If the creek now known as Bear Creek is the one referred to in the entry and grant, the lines then run with the creek, though in different directions from those given in entry, grant, and deeds. Calls for natural objects, such as bank of stream,

will control over calls for direction. Washburn Real Prop., Sec. 631; *Blount* v. *Medlin*, 2 Tenn., 199; *Hebart* v. *Scott*, 11 Pickle, 467; *Massingill* v. *Boyles*, 4 Hum., 206.

In this last case it was held that where a call for course would deviate from a creek called for, parol evidence will not be admitted to set up the line that would be followed by the course unless it was at the time of the grant actually surveyed and marked.

We conclude, then, upon this question of fact that this 94 acres was included in the grant to the 300 acres and in the deeds to the 1,878 acres.

The second contention of defendant is that because the land actually inclosed and occupied for seven years continuously by the complainant was not a part of this 94 acres in controversy, the complainant cannot recover, although the land so occupied, and also the 94 acres, was a part of the 1,878 acres included in complainant's deed from Paine to Turnage. This contention of defendant is, we think, unsound.

The prerequisites to recovery in ejectment are to show that the land in controversy has been granted, and, having shown that the State is no longer interested and that the statute of limitations are operative upon the land by reason of the grant, then show either a continuous title or color of title in complainant with seven years' actual occupancy of some part of the land under color of this title.

The grant and the color of title need not be identical in boundaries. It is sufficient if both cover the land in controversy. Nor is it necessary that the occupancy shall be of a part of the grant. The grant, if not to complainant, merely puts title so that statutes of limitation may begin to operate. The occupancy is coupled only with the color of title. Seven years' adverse possession under color of title vests in the holder absolute title in fee, not only to the land actually, but. the extent of the boundaries set out in the assurance of title. Code (Shannon), 4456; *Brown* v. *Johnson*, 1 Hum., 261; *Ramsey* v. *Monroe*, 3 Sneed, 329; *Nelson* v. *Trigg*, 4 Lea, 706.

To hold that the clearing or inclosure must be on every separate grant composing a large tract embracing several grants conveyed in one deed, would be contrary to the holding of former decisions and to the express words of the statute (Code, § 3459), which says: "Anyone holding land, by himself or . . . is vested with a good and indefeasible title in fee to the land described in his assurance of title." It is sufficient if complainant has shown grant to the land in controversy and a color of title with seven years' adverse possession of a part of land covered by his deed, whether that actually occupied is a part of the grant or not.

We do not think the case of *Carter* v. *Ruddy*, 166 U. S. Rep., 493, holds contrary to this ruling. In that case the conveyance was of a block of land

Turnage *v.* Kenton.

divided into lots and so described. These lots were laid off and so marked on the ground. There was adverse holding of some of these lots so marked and designated, and it was held that this holding did not cover the other lots. Here the deed was to an 1,878-acre tract, the whole tract being described by metes and bounds. The decree of the Chancellor is affirmed with costs.