LIEBERMAN, LOVEMAN & O'BRIEN *et al. v.* JAMES· N.· CLARK *et al.*

(*Nashville.*   December Term, 1904.)

1. **FINDING OF FACTS.** In a case tried by the circuit court judge without a jury is conclusive, if supported by some evidence.

   Where, in a replevin suit in the circuit court to recover logs, tried before the judge without the intervention of a jury, there 'is some evidence to support his finding that the plaintiff was in possession of the land from which the logs were cut by the defendant at the time they were cut, that question, on appeal, must be determined in favor of the plaintiff. (*Post, pp.* 121; 122.)

2. **REPLEVIN.** Possession will support replevin against a trespasser.

   The special property conferred by possession is sufficient to support an action of replevin against a trespasser. (*Post, pp.* 122, 125-128.)

   Cases cited and approved:   Crawford v. Bynum, 7 Yer., 381; Shaddon v. Knott, 2 Swan, 358, 363; Wilson v. McQueen, 1 Head, 17, 18; Criner v. Pike, 2 Head, 398; Carson v. Prater, 6 Cold., 565; Brammell v. Hart, 12 Heis., 366; Shields v. Dodge, 14 Lea, 356; Cartwright v. Smith, 104 Tenn., 689, 690, 691; Railroad v. Hall, 107 Tenn., 512.

3. **SAME.** In an action to recover logs, title papers may be looked to for purpose of defining possession of land

   In an action of replevin to recover logs cut from land in possession of plaintiff, it is not improper in the court to look to the deeds showing title in plaintiff for the purpose of defining his possession. (*Post, pp.* 123, 132.)

4. **CHAMPERTY.** Deed for land in the adverse possession of another by actual possession and consequent constructive possession to extent of boundaries of title papers is champertous and void.

Where the plaintiff in an action of replevin to recover timber was in the adverse possession of the land from which the timber was taken, by actual possession of part and the consequent constructive possession of the rest to the extent of the bound- aries in his title papers, a deed made by a person out of pos- session, under which the defendant entered on the land and removed the timber from that part so adversely held by such constructive possession, cannot protect the defendant against a recovery, because such deed is champertous and void as to the whole tract so adversely held. (*Post, p.* 123.)

Case cited and approved: Green v. Coal & Coke Co., 110 Tenn., 35.

5. **ADVERSE POSSESSION.** Actual possession of part of land under registered assurance of title extends adverse possession to the whole tract, enabling such adverse possessor to main- tain a replevin suit for timber felled and, removed therefrom.

Adverse possession of land under a registered assurance of title, or color of title, by actual possession of part of the land ex- tends not only to the actual possession, but also to the limits or boundaries contained in the title papers of such adverse pos- sessor, and to the timber growing thereon, so as to enable such adverse possessor to pursue and recover the timber felled and removed therefrom, by an action of replevin, without deraigning his title, and regardless of the invalidity of his title or the superiority of the title of the person who felled and removed the timber therefrom, under a deed made to him after such pos- session was taken and during the continuance thereof. (*Post, pp.* 124-141.)

Cases cited and approved: Hart v. Vinsant, 6 Heis., 616, 618, 619; Pullen v. Hopkins, 1 Lea, 741; Hicks v. Tredericks, 9 Lea, 491;

Lieberman v. Clark.

Hunter v. Bills, 3 Tenn. Cas., 97, 101; Hebard v. Scott, 95 Tenn., 467; Turnage v. Kenton, 102 Tenn., 328; Winters v. Hainer, 107 Tenn., 337; Elliott v. Coal & Coke Co., 1 Cates, 745; Green v. Coal & Coke Co., 2 Cates, 35; Mansfield v. Northcut, 4 Cates, 536; Cooper v. Watson, 73 Ala., 252, 255; Anderson v. Hapler, 34 Ill., 436, 439; Eaton v. Southby, Willes, 131; Snyder v. Vaux, 2 Rawle, 427; Vausse v. Russell, 2 McCord, 329; Mather v. Church, Serg. & R., 509; Baker v. Howell, 6 Serg. & R., 476; Brown v. Caldwell, 10 Serg. & R., 114; Powell v. Smith, 2 Watts, 126; DeMott v. Hagerman, 8 Cow., 220; Davis v. Easley, 13 Ill., 192; Stockwell v. Phelps, 34 N. Y., 363, 364; Rich v. Baker, 3 Denio, 79; Page v. Fowler, 28 Cal., 605; Halleck v. Mixer, 16 Cal., 579; Rees v. Higgins, 9 Kan. App., 832, 834; Core v. Faupel, 24 W. Va., 245; Hodges v. Eddy, 38 Vt., 327; McColman v. Wilkes, 3 Strob. (S. C.), 465, 471; Jeffrey v. Owen, 41 N. J. Law, 260; Newcome v. Crews, 98 Ky., 339; Brown v. Volkening, 64 N. Y., 80; Foust v. Territory, 8 Okla., 541; Mitchell v. Bridges, 113 N. C., 63; Graham v. Houston, 15 N. C., 232; Sullivan v. Sullivan, 66 N. Y., 37.

Case cited and disapproved in part: Hart v. Vinsant, 6 Heis., 616.

6. **DEEDS OF CONVEYANCE.** Referring to State's grant by its number is sufficient, where such grant describes the land.

Deeds which refer to the State's grant of land by its number cannot be excluded on the ground that they do not describe any land, where the grant describes the land. (*Post, p.* 141.)

7. **REPLEVIN.** Plaintiff with right may join others with him without right.

Where the whole-possessory right of property is in one of the plaintiffs in an action of replevin, it is immaterial to the defendants that he joins others with him in the suit, and shares his recovery with them. (*Post, p.* 141.)

Lieberman v. Clark.

8.  **SAME.** Same. Joinder of grantor of portion of land and grantee as plaintiffs obviates the question as to which part of the land the timber was cut on.

Where a grantor of a portion of a tract of land and his grantee join in an action of replevin to recover timber felled and removed, it is immaterial to the defendant that the timber or part of it may have been cut and removed from the portion so sold and conveyed. (*Post, pp.* 141, 142.)

9.  **SAME.** Immaterial whether timber was cut from land of plaintiff or a third person who transferred his right to plaintiff before suit.

Where a third person transferred his right in timber, whatever it might be, to the plaintiff prior to the institution of the replevin suit, it is immaterial to the defendant that part of the timber was cut from the land of such third person, and it was impossible to distinguish it. (*Post, p.* 142.).

FROM FENTRESS.

Appeal in error from the Circuit Court of Fentress County.—D. L. LAINDSDEN, Judge.

A. M. ROBERTS and CONATZER & CASE, for Wheeler, Administrator.

EVANS & SNODGRASS, for Clark et al.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Fentress county in replevin, by defendants in error, to re-

cover of plaintiffs in error forty-five logs.  The case was tried before Hon. D. L. Lansden, chancellor, sitting as circuit judge, without the intervention of a jury. He rendered a judgment in favor of Clark and others against Lieberman, Loveman & O'Brien and the estate of Hizar Beaty (J. T. Wheeler, administrator), and the latter alone appealed.

There was evidently a purpose on the part of Hizar Beaty, in taking the logs, to compel defendants in error to try the title to the land on which the logs grew, through the agency of the replevin suit; but his honor found as a fact that the defendants in error were in possession of the land on which the logs grew at the time they were cut by the said Hizar Beaty, and he declined to consider the question whether the defendants in error had the superior title.  He passed upon certain title papers of the plaintiffs in error, holding them void on the ground of champerty, for the purpose of determining the question of conflicting possession.

The plaintiff in error appealed from the judgment of his honor, and has filed numerous grounds of error. These assignments cover a wide scope, ranging over the whole field of title, and, besides, raising numerous questions of evidence.  In the view we take of the case, it will be necessary to notice only a few of the assignments.

There is some evidence in the record to support the finding of his honor that the defendants in error were in possession of the land from which the logs were cut

by Hizar Beaty at the time they were cut. So on this appeal that question must be determined in their favor. The land referred to was covered by grant No. 3,329, issued on the 22d of April, 1834, to Milton King. There are in the record two deeds purporting to convey the same land to Bruno Gernt, one of the defendants in error; a deed from A. Litton, Jane E. Litton, and Alice W. Litton, of date September 13, 1889; and a deed from Claiborne Beaty, of date March 5, 1890. There is also in the record a lease, of date August 3, 1896, made by Bruno Gernt, Sidney Beckwith, W. L. Jenks, W. W. Jones, and James N. Clark (defendants in error), to one Abe Franklin, covering this same land. There is also testimoy in the record to the effect that while Abe Franklin was holding under this lease, residing in a house built upon the land, the said Hizar Beaty entered upon the land and cut the logs.

Upon the strength of this testimony, his honor held that the defendants in error were entitled to recover in replevin, regardless of the question concerning the ultimate title to the land, since the special property conferred by possession is sufficient to support the action of replevin against a trespasser.

We think his honor's view was correct. The rule referred to is necessary to the preservation of the peace of society. If it should not be maintained, it would soon result that men, everywhere, in cases of disputed title to personal property, would seize the property by the strong hand, at the outset, for the purpose of forc-

ing upon the adversary party the necessity of taking the initiative in a burdensome suit, and assuming the *onus* of proof as to title.

It is insisted that, if the chancellor was at liberty to decline to go into the final question of title to the land on which the logs grew, it was inconsistent and improper in him to look to the deeds above referred to for the purpose of defining possession.

We do not think so. The use of deeds and even title bonds for this purpose is quite common. The question proposed for consideration was not one of title, but only of possession—a distinct, independent, and legal inquiry under our system of real property law.

To meet this special phase of the case made by the defendants in error, the plaintiffs in error offered in evidence in the court below a deed purporting to have been made by the Union Land, Coal & Coke Company to the Cumberland Coal & Coke Company, of date September 24, 1899, covering the same land, and testimony tending to show that Hizar Beaty cut the logs under the authority of the latter company. The deed was objected to by the defendants in error on the ground of champerty, because the testimony showed that they (defendants in error) were in possession of the land, by a tenant residing thereon, when the deed in question was made. This objection was sustained by the chancellor and the deed excluded. To this action error is assigned here by the plaintiffs in error.

There can be no doubt, under our statute, that such

a deed is void. *Green* v. *Cumberland Coal & Coke Co.*, 110 Tenn., 35, 72 S. W., 459. But plaintiffs in error reply to this that even a void deed may be "color of title," under our decisions, and a possession thereunder, if held long enough, may, under the statute of limitations, ripen into a good title, which is, of course, true. From this it is urged that the entry upon the land under the champertous deed in question was lawful, and neutralized the prior possession under the two Gernt deeds referred to.

We think the conclusion is based upon a false assumption. Possession under a false deed cannot, in the very nature of things, be rightful. In fact and in law it is wrongful against the person having the true title, and the true right of possession attendant upon that title, during every day it lasts, until the full term of seven years has been completed. When that time arrives, the possession having been open, notorious, adverse, and undisturbed, and the deed having been registered during the full term of seven years, a distinct right is conferred upon the hitherto wrongful possessor by positive law —our statute of 1819, based upon a well-known public policy, which need not be more particularly referred to. Shannon's Code, sec. 4456. When this term of seven years has been thus completed under color of title, various questions may and do arise, in estimating the value of that possession, looking back over its course. Among these is the question of the neutralization of one possession by another. It is held that, in the case of

Lieberman v. Clark.

the interlap of grants, rival possessions within the interlap will neutralize each other, and the case must be determined upon the strength of title.

These doctrines find their most ordinary application in cases arising under the statute of limitations, albeit they are sometimes controlling in questions purely of possession. It is not true, however, that if one be in actual possession of a portion of a tract of land, by a house or other inclosure built thereon, occupied by a tenant, under a deed defining boundaries, under which state of facts the possession is extended by construction of law to the whole boundary covered by the deed (*Mansfield v. Northcut*, 4 Cates, 536, 80 S. W., 437), another may enter upon the same land under a forged or a champertous deed, and force the former to bring ejectment against him, or proceed, after entering, to cut timber, and, when sued by the former in replevin for the timber itself, or when sued for the value, compel such prior possessor to try the title to the land on which the timber grew. Certainly, if such suit be brought within three years (Shannon's Code, sec. 5096) for possession against such interloper, the action would be one in forcible entry and detainer, and not ejectment, and in such an action the question of title would not arise, but only the question of prior possession. The same would necessarily be true of a suit brought within three years to recover for timber cut, whether in a direct action for the timber itself, as in the present case, or for the value of it. Whether this rule would be different after the

expiration of three years, we need not consider, since the present action was brought within less than three months after the seizure of the logs. However, there can be no doubt that adverse possession of personal property for three years would vest title therein (Shannon's Code section 4470; *Morris* v. *Lowe,* 97 Tenn., 243, 36 S. W., 1098) so as to bar an action for the property itself. But it is, beyond question, true that prior possession itself would furnish a sufficient basis of right to support an action against a trespasser for either real or personal property. Prior possession, in and of itself, confers a right as against all trespassers, or persons seizing property without due process of law; and the law will protect that right againt such persons by restoring, through an appropriate possessory action, that possession, when it is violated in the manner indicated. Any other course of decision would soon fill the State with vexatious and wasteful litigation, if not with violence and bloodshed. Under the opposite theory, how easy it would be to disturb any man's title! And how great the reward for disrupting the peace of society! Any man coveting the land of another could cause a third party to make him a deed purporting to convey an estate in fee, and then enter upon the land and proceed to hold it, or even merely to cut timber; and, to enable the prior possessor to obtain redress, he must submit to a raking fire on his title, from turret to foundation stone. If such investigation reveal one spot of fatal weakness, his arms of both attack and defense are shattered in his hands, and the in-

terloper ·is left in possession of the property; and this not because he has the better right, but because he was shrewd enough to discover the weakness of his victim's position, and bold enough to place himself in an attitude where that victim would be compelled to attack him under an irretrievable disadvantage, and to encounter inevitable defeat.

In *Cartwright* v. *Smith,* 104 Tenn. 689, 690, 691, 58 S. W., 331, it is said : "The gist of the action [replevin] is that the defendant is in possession of the property, and that plaintiff is entitled to the possession. Judge Caruthers, in treating the sections of the Code regulating actions of replevin, has said, viz : 'Upon a fair construction of the whole of this act, and by it judging of the intention of the legislature, we are constrained to decide that it will lie in all cases where the plaintiff has a present right to the possession of any personal property in the possession of the defendant. In all such cases the property is unlawfully detained from the plaintiff by the defendant, and therefore falls within the plain language and meaning of the act.' " In accord : *Shaddon* v. *Knott,* 2 Swan, 358, 363, 58 Am. Dec., 63; *Wilson* v. *McQueen,* 1 Head, 17, 18; *Brammell* v. *Hart,* 12 Heisk., 366; *Shields* v. *Dodge,* 14 Lea, 356. And compare *Crawford* v. *Bynum,* 7 Yerg., 381; *Criner* v. *Pike,* 2 Head, 398; *Carson* v. *Prater,* 6 Cold., 565; *Railroad* v. *Hall,* 107 Tenn., 512, 64 S. W., 481. "Where property which has been annexed to the freehold is severed therefrom, even by a

wrongdoer, it becomes personal property, so as to become recoverable by an action of replevin." 24 A. & E. Encyc. Law (2d Ed.), p. 481, and cases cited; 28 A. & E. Encyc. Law (2d Ed.), p. 543. "Where the title to property which has become personalty by reason of its severance from the soil or freehold depends upon the ownership of the real estate, it has been held that the true owner, if out of possession, could not in replevin recover the property, where its severance from the freehold was made by a person holding adversely and in good faith under claim and color of title, as the action of replevin could not be made the means of litigating and determining the title to real estate as between conflicting claimants." 24 A. & E. Encyc. Law (2d Ed.), p. 486.

In Cobbey on Replevin (Ed. 1890) it is said: "Under the authorities, it is allowable in a replevin action to examine into the title of the real estate just far enough to determine whether or not there are adverse claimants to the real estate. If there are, the validity of their claims cannot be tried in the replevin action; but, if there are not adverse claimants to the realty, the title may be shown in the replevin action for the purpose above stated." Sections 353, 374, 375, 376, 382.

In *Cooper* v. *Watson*, 73 Ala., 252, 255, it is said: "The doctrine seems well settled, upon principle and authority, that if the owner of the land be not in the actual possession—if he can show title to things severed from it only by showing title to the land—a personal action

for the taking, conversion, or detention of such things will not lie. If he have the possession at the time of the severance, the rule is different. But if this possession is divested—if his right lie in entry—and the adverse possessor gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the things severed are converted into chattels. But they do not become the property of the owner of the land. He is out of possession, and has no right to the immediate possession of such things, nor can he bring any action to recover them until he gains possession." "To hold the law otherwise," as said in Smith's Leading Cases, quoted in the preceding case, "would be to bring the title to the land in dispute in a transitory action, although the plaintiff had not adopted proper means for reducing his title to possession. For, if the general right to land, unaccompanied by possession, were viewed as giving first a general right of property in whatever may be severed from the freehold, and then a consequent constructive possession, the only question in an action of trover or replevin brought against an actual possessor would be as to the party in whom the title to the realty lay."

The point may be enforced by a few excerpts from other authorities:

In *Anderson* v. *Hapler*, 34 Ill., 436, 439, 85 Am. Dec., 318, it is said: "Our statute gives the remedy where the goods or chattels have been wrongfully distrained or otherwise wrongfully taken, or shall be wrongfully de-

. tained. The possession of the land was always a suffi-
cient title thereto as against a stranger. The rightful
owner could not forcibly enter and eject a disseisor, nor
question his rights, excepting in a real or possessory ac-
tion for the recovery of the land. The possessor of land
might bring replevin for chattels severed from the free-
hold, and, as the ownership of lands drew to it the con-
structive possession, the owner might bring replevin for
chattels thus severed where there was no adverse pos-
session. But the owner could not bring replevin for
chattels severed from land in the adverse possession of
the defendant or of a third person. The law does not per-
mit him to assert his title to the land against the person
in adverse possession in that manner." Citing Morris on
Replev., 57, 58; 1 Smith's Lead. Cas., 485; 1 Chitty, Pl.
163; *Eaton* v. *Southby,* Willes, 131; *Snyder* v. *Vaux,* 2
*Rawle,* 427; *Vausse* v. *Russell,* 2 McCord, 329; *Mather*
v. *Trinity Church,* 3 Serg. & R., 509, 8 Am. Dec., 663;
*Baker* v. *Howell,* 6 Serg. & R., 476; *Brown* v. *Caldwell,*
10 Serg. & R., 114, 13 Am. Dec., 660; *Powell* v. *Smith,* 2
Watts, 126; *DeMott* v. *Hagerman,* 8 Cow., 220, 18 Am.
Dec., 443; *Davis* v. *Easley,* 13 Ill., 192.          *

In *Stockwell* v. *Phelps,* 34 N. Y., 363, 364, 90 Am.
Dec., 710, it is said: "Replevin, or an action in the na-
ture of a replevin, in the *cepit,* can only be brought when
trespass could be maintained, and that would only lie
for an injury to land when the plaintiff is in possession
(*Rich* v. *Baker,* 3 Denio, 79; *De Mott* v. *Hagerman,* 8
Cow., 220) ; and one being in the actual possession of the

premises, claiming them as his own, is regarded as the owner, as to all the world, until after a judicial decision."

In *Brown* v. *Caldwell,* 10 Serg. & R., 114, 13 Am. Dec., 660, it is said: "Replevin is not the proper form of action to try title to land *ex directo,* though incidentally title to such action may sometimes be called in question. In Pennsylvania this action has been allowed a great sweep, and to embrace every question of property. But it is property in goods, and not in lands. It is to try the title to personal property, and not to real estate. Replevin will not lie for a tract of land. Title cannot be decided in an action merely personal and transitory, no matter whether replevin, trover, or assumpsit. Nor can these actions be maintained by one not in the actual, exclusive possession, whatever his title may be, against one who is in possession, claiming right. Here the possession is not vacant. The owner of the title is in the constructive actual possession."

In *Page* v. *Fowler,* 28 Cal., 605, 610, it is said, quoting from *Halleck* v. *Mixer,* 16 Cal., 579: "The true rule is this: 'The plaintiff out of possession cannot sue for property severed from the freehold when the defendant is in possession of the premises from which the property was severed, holding them adversely, in good faith, under claim and color of title. In other words, the personal action cannot be made means of litigating and determining the title to the real property as between conflicting claimants.' "

In *Rees* v. *Higgins,* 9 Kan. App., 832, 834, 61 Pac. 500, it is held that it is "not proper . . . to make a replevin action the means of litigating and determining the title to real property as between conflicting claimants."

The reason underlying all these cases is that the primary consideration in a replevin action is the right of possession, and that, as to things severed from the realty, the possession of land at that time determines the right of possession to such things, such person being in the adverse possession of the land, and claiming under color of title; that the court will determine the matter upon the right of possession, and not upon the title to the land; and finally that in such an action the court will not permit the title of the land to be determined.

There is one exception to be noticed. This is: Where neither party has actual possession of any portion of the land at the time the timber is cut, the right to the possession of such timber must be determined by the title to the land, since the law in that case would attach constructive possession of the land to the title. *Hart* v. *Vinsant,* 6 Heisk., 616. But even such a case evidence of title is permitted, "not for the purpose of trying the question of title to the land," but for the purpose of determining the question of possession. Id., 618, 619.

Here it is necessary that we should pause for a moment, and note the meaning attached to the terms "actual possession" and "constructive possession" in the authorities.

Of course it would be idle to attempt a review of the

cases within the limits of a judicial opinion, so great is their number, But they are collected in Am. & Eng. Encyc. Law, pp. 822 to 830; vol. 13, p. 745; vol. 28, pp. 238, 239; Cyc., vol. 1, pp. 983, 1125-1126. An examination of these authorities, text and notes, will disclose the following:

There is some diversity in the use of the terms above referred to, but a substantial agreement concerning the true test of adverse possession in cases such as we have before us, wherein it appears there is actual possession of a portion of tract of land by one claiming under color of title defining boundaries. In the first authority cited in the last paragraph it is said: "It is well established that possession which is necessary to ripen into title must be actual, and, to begin such possession, there must be an entry which will amount to an ouster of the true owner. It must be actual, either of all or part of the land claimed, as the same may be held with color of title or without, because constructive possession follows the title, and there cannot be two possessions of the same land at the same time, and the owner, being in possession by virtue of his title, remains until he is disseised by another entering and holding for himself." Am. & Eng. Encyc. Law, p. 822. "Mere naked possession without color of title is adverse only to the extent of the actual possession or inclosure. But an entry into possession under a conveyance from a person having color of title is presumed to be made according to the description in the deed, and his occupancy is construed as possession

of the entire lot, where there is no actual adverse posses-
sion of the parts not actually occupied by him." Id., p.
824. "A man cannot by mere physical means retain land
in his exclusive grasp. Possession may be more mani-
fest as to a part than as to the rest. Therefore it is an
established rule of law that the actual possession of a
part is the possession of the entire tract or boundary cov-
ered by the occupant's title or claim of title. . . . .
What is the extent of his possession is to be determined
by the limits of his title or color of title. An intruder
without color of title is of necessity confined to his mere
inclosure." Id., p. 825, notes, quoted from *Core* v. *Fau-
pel,* 24 W. Va., 245. "The actual fencing and inclosure
of the tract are not, unless expressly required by statute
essential to constitute adverse possession, but such acts
are very decisive in determining possession and claims
of ownership." Id., p. 828. "Fences are a means by
which possession of land may be taken and held. They
are not, however, the only means. There may be an act-
ual possession without fences or inclosures of any kind,
if it appears from other facts and circumstances that the
plaintiff was exercising exclusive dominion and control
over the land." Id., vol. 13 p. 750. "When one is in act-
ual possession of a portion of a given tract of land, he
will be held, in law, to be in possession of the remainder,
if he holds under a deed or other color of title, and there
is no antagonistic or adverse possession." Id. "Actual
possession or possession in fact exists where the thing
is in the immediate occupancy of the party, or his agent

or tenant." 28 Am. and Eng. Ency, Law, p. 238. "Con-
structive possession, or possession in law, as it is some-
times called, is that possession which the law annexes to
the legal title or ownership of the property where there
is a right to the .immediate actual possession of such
property, but no actual possession." Id. 239. In the notes
to the page last cited we find the following: "Construct-
ive possession is a possession in law, without possession
in fact." *Hodges* v. *Eddy*, 38 Vt., 327. "Properly speak-
ing constructive possession is that possession which the
law annexes to the title." Citing *McColman* v. *Wilkes*, 3
Strob. (S. C.), 471, 51 Am. Dec., 637. "Possession which,
as an inference of law, arises presumptively from the
legal title, is a mere constructive possession, and is
founded on the existence of title in some form." Citing
*Jeffrey* v. *Owen*, 41 N. J. Law, 260. "Constructive pos-
session is that which exists in contemplation of law.
without actual personal enjoyment or occupation." Cit-
ing *Newcome* v. *Crews*, 98 Ky., 339, 32 S. W., 947;
*Brown* v. *Bolkening*, 64 N. Y., 80; *Foust* v. *Territory*, 8
Okl., 541, 58 Pac., 728. "Constructive possession is such
a possession as the law carries to the owner by virtue of
his title only, there being no actual occupation of any
part of the land by anybody." Citing *Mitchel* v. *Bridges*,
113 N. C., 63, 18 S. E., 91; *Graham* v. *Houston*, 15 N. C.,
232. "Constructive possession may exist without an
actual *pedis possessio*, where there is a present right,
and the possession is either vacant, or is consistent with
the right of the owner to an immediate and actual pos-

session by himself." Citing *Sullivan* v. *Sullivan*, 66 N. Y., 37.

In Cyc., vol. 1, pp. 982, 983, it is said: "That an adverse claim to land may ripen into perfect title by virtue of the statutes of limitation, it is primarily essential that the possession relied upon be actual." · On page 1125 it is said: "The general rule is well settled that where a party enters, under color of title, into actual occupancy of a part of the premises described in the instrument giving color, his possession is not considered as confined to that part of the premises in his actual occupancy, but he acquires possession of all the lands embraced in the instrument under which he claims." In a note on page 983 it is said: "Actual possession may not consist either in an occupancy in fact of the whole tract claimed, or of an occupancy of part thereof in the name of the whole, where there is sufficient evidence of the bounds of the whole that is claimed as one entirety, and the circumstances are such that the law extends the possession of the part that is occupied to these bounds. This latter may be termed a 'virtual possession,' in order to distinguish it from the other kind of actual possession, which is called 'substantial' or *'pedis possessio.'* But whatever term may be used to give precision to the subject, the attributes which pertain to an actual possession belong to it, whether it be substantial or virtual." Citing *McColman* v. *Wilkes*, 3 Strob. (S. C.), 465, 51 Am. Dec., 637.

In our own case of *Hebard* v. *Scott*, 95 Tenn., 467, 32 S. W., 390, it was held that "the occupation of part of

the tract, claiming the whole, under a paper title defining its boundaries, is effective possession of the whole tract under the statutes of limitation." To the same effect are *Winters* v. *Hainer,* 107 Tenn., 337, 64 S. W., 44; *Turnage* v. *Kenton,* 102 Tenn., 328, 52 S. W., 174; *Hunter* v. *Bills,* 3 Tenn. Cas., 97, 101; *Elliott* v. *Cumberland Coal & Coke Co.,* 109 Tenn., 745, 71 S. W., 749. We have one or two cases in our reports which upon casual reading would seem to indicate that there must be an inclosure of the whole tract claimed, even when the party claims under color of title; but, upon careful reading of these cases in connection with the cases cited in them (*Pullen* v. *Hopkins,* 1 Lea, 741; *Hicks* v. *Tredericks,* 9 Lea, 491), it is clear that what is meant is simply that there must be some sort of inclosure upon some part of the land, as a house, a fenced field, or other "improvment," as visible evidence of possession, where the land is capable of such use, and not that the whole tract of land must be inclosed.

The latest cases we have upon the subject of adverse possession are *Green* v. *Cumberland Coal & Coke Co.,* 110 Tenn., 35, 72 S. W., 459, and *Mansfield* v. *Northcut,* 4 Cates, 536, 80 S. W., 437, not yet printed in our official reports—both cited supra.

In the first of these cases it is said: "Where there is no part of the land in actual possession, the constructive possession is with the party holding the superior legal title; but, where a portion of land is in actual adverse possession, the party holding has constructive possession

of all of the premises outside of his enclosure to the limits of his claim or assurance of title; and such .constructive possession is superior to that which results merely from the ownership of the legal title, and is sufficient to put in operation the statutes of limitation to the entire tract."

In the second case it is said: "The Northcuts had actual possession of a small house upon the land occupied by Mrs. Mansfield as their tenant, claiming to the extent of the boundaries called for in their title papers. The remainder of the tract was uninclosed. A claimant of the land under a hostile title to that of defendants in error built a cabin upon a different part of the premises, and induced Mrs. Mansfield to move into it and attorn to him, and this action [forcible entry and detainer] was brought to dispossess her. Defendants in error, under these facts, had possession of the entire tract—actual possession of the house occupied by their tenant, and constructive possession of the remainder. Constructive possession of this nature, connected as it is with actual possession of a part of the premises, is of a higher character than that which follows the legal title. It will perfect a defective title, under the statute of limitations, and raise a presumption of grant, when held for sufficient periods of time. . . We think that constructive possession of this character is sufficient to enable a claimant so holding to maintain this action."

It is perceived that the species of "constructive possession" enforced in these two cases in no wise differs

from the "effective possession" mentioned in *Hebard* v. *Scott,* and the '"virtual possession" mentioned in *Mc-Colman* v. *Wilkes,* supra, and that the attributes which pertain to an actual possession belong to it.   It is further apparent that the learned  justice who  prepared the opinion in the cases quoted from carefully distinguished the kind of  constructive possession—"effective possession" or "virtual possession"—enforced in those cases from the general constructive possession which the law attaches to the title where there is no actual possession in the owner of the title, and no one in adverse possession.  .It is also perceived that the learned justice differentiated this "effective possession" or "virtual  possession" from  technical  "actual  possession" merely for the sake of scientific precision or logical accuracy of thought, and that he not only did not assign to it a different office and effect from that belonging to actual possession, but blended the two and gave them the same effect; that is, treated both as constituting, in effective operation, a single possession.   In so treating them, the opinions referred to not only held the court in line with its former adjudications above referred to with approval, but preserved its harmony with the overwhelming weight of  authority in  this  country  upon the special phase of the question herein considered, as shown by the excerpts which we have made from  the text-books quoted above, and as exhibited by the vast number of cases cited in the notes on the pages referred to.

The substance of the whole matter, as applied to the present controversy, is that the defendants in error being in actual possession of a part of the tract on which the timber grew, by their tenant living in a house built upon the tract, holding under color of title, and claiming the land as their own at the time the timber was felled and the logs taken away, their possession extended to the limits or boundaries contained in their title papers, which covered the space where the trees grew. This possession was the "effective possession" or "virtual possession" described above, and was an "adverse possession," in the sense in which that term is used in the law. Being thus in adverse possession of the land, they were likewise in adverse possession of the timber which grew upon it, and, when it was felled and the logs hauled away, these logs were taken from their possession; and, within the authorities cited, and under the principles stated, they were entitled to pursue the logs by the appropriate possessory action (replevin), and to sustain the action they did not need to go further than prove their status as above outlined, and the taking, without deraigning title or going into a controversy with the person taking the logs concerning the true title to the land.

Any other view would place the court in the novel position of holding that one in adverse possession of land, claiming under color of title, may recover the land itself from a trespasser by a possessory action, but must bring ejectment for timber cut from it, or (the same

thing, in substance) must sustain his possessory action for the timber (replevin) by the character of testimony required only in ejectment cases.

So, recurring to the special point previously mentioned, we conclude that the deed of the Cumberland Coal & Coke Company, even if admitted in evidence, could not protect Hizar Beaty's estate against recovery in the present action.

It is insisted by the plaintiffs in error that his exception to the two Gernt deeds above referred to should have been sustained. We do not think so. The exceptions were, in substance, that those two deeds did not describe any land. This is a mistake. They refer to the grant by its number, and it describes the land. *"Id certum est quod certum reddi potest."*

It is insisted that the defendants in error do not show a right to the possession of any interest in the logs sued for, and that there can be no recovery in replevin in such a case. To this it need only be replied that the whole possessory right is shown to be in Bruno Gernt. It is immaterial to the plaintiffs in error if he join others with him in the suit, and share his recovery with them.

It is said that, after the date of his deeds above referred to, Bruno Gernt executed a deed to Sydney Beckwith to an undivided 450-acres interest in the land covered by grant No. 3329, and that it does not appear but that the logs in question, or some of them, were cut from said Beckwith's land. This is an immaterial matter to

the plaintiffs in error, since Beckwith joined in the suit below.

It is said that part of the logs in question were cut from the land of Marion Stephens, and part from the land claimed by the defendants in error, and that, it is impossible to distinguish them. This is immaterial, also, since it appears that Marion Stephens transferred his right in the logs, whatever it might be, to the defendants in error prior to the bringing of the suit below.

The foregoing sufficiently disposes of the real matters in controversy, and we need not refer to or consider the other errors assigned. It results that the judgment of the court below must be affirmed.

### DISSENTING OPINION.

MR. JUSTICE WILKES delivered the following dissenting opinion: I do not concur with the majority opinion.

There is no principle better established than that in an action of replevin the plaintiff must show either a general or special property or ownership in himself.

In *Parham* v. *Riley*, 4 Cold., 5, it is said:

"The purpose of the action of replevin is to recover in specie the personal chattel which has been taken and detained from the owner's possession.

"Under the plea of not guilty, it is competent for the defendant to show that the title to the property replevied is not in the plaintiff, but in himself or in a third person, and thereby defeat the action. The plaintiff cannot succeed unless he prove either a general or special property

in himself. Hence property acquired by robbery does not vest such title in the trespasser as will authorize him to maintain the action."

Under the plea of not guilty, in an action of replevin, "the material inquiry is as to the property of the plaintiff, which he must be prepared to prove. If this issue is found against him, that is, that the property is not in him, he cannot succeed." 2 Greenleaf on Evidence, 563.

"The plaintiff cannot succeed, then, unless he is prepared to prove either a general or special property in himself, and will be defeated if the proof shows the right to the property and possession is in a stranger, etc.

"It is enough for this case to say that the present dedendant has a right to show that the plaintiffs have no title, or that the legal title to the property is outstanding in any one else; and, if he succeeds in doing so, the plaintiff must be defeated." *McFerrin* v. *Perry,* 1 Sneed, 316.

In the case at bar the plaintiff is relieved by the majority from showing property or title in himself, and his right to recover is made to depend upon constructive possession, although actual possession would not suffice unless the right to that possession is shown by the proof. See, also, *Collier* v. *Yearwood,* 5 Baxt., 581.

To the same effect is *Hart* v. *Vinsant,* 6 Heisk., 618. In that case it is said: "Situated as the trees were out of which the rails were made—the land lying uninclosed and therefore not in the actual possession of either party—it became a legitimate and necessary inquiry to

ascertain upon whose land they stand, not for the purpose of trying the title to the land, but as a means of determining the right to the possession of the rails when made."

In *Clement* v. *Wright,* 40 Pa., 250, it is said: "In the absence of any actual adverse possession of wild timber land, the law casts the possession on the owner; and proof of title was therefore admissible, not for the purpose of trying the title, but to prove possession in the rightful owners, which possession defendant had acquired by purchase. To the extent that it was legitimate and necessary to inquire into the ownership or right of possession of the rails, it was incumbent on both parties to adduce the best evidence of title. It was also erroneous to exclude the title papers of defendant."

The action of replevin is based upon the trespass in the taking, and in such actions of trespass the plaintiff must show an actual possession or a valid title in himself to the premises in dispute. *Snoddy* v. *Kreutch,* 3 Head, 303; *Large* v. *Dennis,* 5 Sneed, 597.

The title required in cases of replevin is the same as in actions of trover. Cobbey on Replevin, section 89.

When a plaintiff is in actual possession, he need not deraign his title, as against a naked trespasser. *Large* v. *Dennis,* 5 Sneed, 597.

"But constructive possession can never be determined to be in any other than the legal owner of the premises. . . . Therefore the plaintiff in this action, where brought for a casual trespass to wild and unoccu-

pied lands, must show title to the premises." *Polk* v. *Henderson*, 9 Yerg., 310; *Douling* v. *Hickman*, 4 Hayw., 170; *West* v. *Lanier*, 9 Humph., 771; *Bailey* v. *Massey*, 2 Swan, 168.

As we understand the opinion of the majority, any person having constructive possession, but not actual occupancy, of premises, may bring an action of replevin for timber cut.

If so, then, in case of an interlap or any other conflict of title, in which both parties have possession of part and title papers for the remainder, either party may bring replevin against the adverse claimant, without showing title and ownership, because each has constructive possession of the same grade and dignity.

In addition, it is a solecism to speak of constructive possession which is not based upon ownership and title, for, in order to show constructive possession, title and ownership must appear as its basis.

The correct doctrine, as I understand it, is that a party in actual possession or occupancy of land, as when it is inclosed, etc., may maintain replevin against a naked trespasser who does not claim title. But where there are two parties claiming title to land, and neither in occupancy, neither may maintain replevin for timber cut on the disputed premises, and certainly not without showing "ownership," which in the case of real estate is synonymous with "title," and title cannot be tried in an action of replevin. As is said in Cobbey on Replevin, section 376:

"In replevin for logs cut and removed by defendants from land to which plaintiff claims title, proof that the plaintiff was in actual possession and occupancy of the land at the time of such cutting and removal is sufficient to enable him to maintain the action, without proof of a paper title, unless the defendants prove an adverse title thereto of a higher character than a mere possessory title. But where the land was unoccupied when the logs were taken, plaintiff must show that he is the real owner, and trace his title to the government. Where a trespasser settled on timber land for the purpose of cutting the timber thereon, such settlement does not constitute him an adverse claimant, and the true owner may bring replevin for the logs and the timber so cut."

To the same effect, see, also, 24 Am. & Eng. Ency. Law (2d Ed.), 486, section 8; *Hungerford* v. *Redford,* 29 Wis., 345; *McNarra* v. *Chic. & N. W. R. R.,* 41 Wis., 69; *Wadleigh* v. *Marathon, etc.,* 58 Wis., 546, 17 N. W., 314.

The majority opinion refers to Cobbey on Replevin, sections 353, 374, 375, 376, 382; and section 353 is copied, which explicitly and directly supports this dissent, by stating, in substance, that, where there are adverse claimants to land, replevin will not lie for timber cut by one of them.

Section 376 we have already copied. The gist of that section is that, when the land is unoccupied when the logs are taken, the plaintiff must show that he is the real owner, and trace his title to the government.

So in section 354 it is said: "When the land is wild

and uninclosed, the plaintiff must show a good legal title, as constructive possession follows the legal title." *Johnson* v. *Elwood,* 53 N. Y., 431.

To the same effect is *Hart* v. *Vinsant,* 6 Heisk., 616.

In *Hungerford* v. *Redford* and another, 29 Wis., 345, it is said:

"Action to recover the possession of a quantity of pine logs, alleged to have been cut by the defendants on a certain tract of land belonging to the plaintiff, and by them removed therefrom. The complaint is in the usual form. The answer is a general denial, and an averment that the land upon which the logs were cut and from which they were removed belongs to the defendants.

"The plaintiff recovered judgment in the circuit court, from which the defendants have appealed.

"(1)   It appears by the evidence that the land from which the logs were taken was unoccupied, and it was therefore necessary that the plaintiff should prove that he was the owner thereof before he could recover the logs.

"The owner of the land is the owner of the logs and entitled to the possession of the same.

"To prove his title to the land, the plaintiff gave in evidence a conveyance thereof executed by Eli P. May and wife to Wm. B. Ogden, dated January 21, 1857; also conveyances of the same land executed by Ogden to Flagg, by Flagg to Rumsey, and by Rumsey to the plaintiff. The latter of these conveyances is dated August 17, 1868. This is all of the testimony relating to plaintiff's title to the land, and it is clearly insufficient. It

fails entirely to show that May or any other grantor in either of the above-mentioned conveyances had any title to the land, and hence fails to show that the plaintiff has title thereto.

"A merely colorable title in the plaintiff is not alone sufficient to entitle him to judgment in an action like this, where, as in this case, the land is unoccupied. Had he been in the actual possession and occupancy of the land when the logs were cut, he could have maintained this action without making any proof whatever of a paper title, unless the defendants proved an adverse title thereto of a higher character than a mere possessory one. But the plaintiff was not in actual possession of the land when the logs were cut, which was in winter of 1868-69; and he shows no title in himself to the land, except one which is merely colorable.

"If the plaintiff is not the real owner of the land, and the defendants shall be compelled to pay the judgment which he recovered against them in the circuit court, what rule of law will prevent such owner from bringing an action against them for the same logs, and recovering therein? No such rule has been contended for in this case, and we are not aware that there is any such rule. The fact that a recovery by the holder of a merely colorable title is no bar to a recovery by the real owner demonstrates that none but the real owner can recover."

In *McNarra* v. *Chicago & Northwestern Ry. Co.,* 49 Wis., 74, it is said:

"The title necessary to be proved in order to maintain the action is the same as in an action of trespass *quare clausum fregit,* or in replevin for timber cut and removed by a trespasser from the lands of the plaintiff. In either case, if the lands upon which the trespass was committed were vacant and unoccupied, the plaintiff must prove his title thereto, or he cannot recover. But if he was in the actual possession and occupancy of the land when the trespass was committed, he may maintain trespass or replevin, according to the exigencies of the case, without making any proof of a paper title, unless the defendant prove an adverse title thereto of a higher character than a mere possessory one. *Hungerford* v. *Redford,* 29 Wis., 345.

"In this case the plaintiff showed himself in actual possession of the land at the time of the injury, and the defendant did not show or attempt to show any outstanding adverse title thereto. Hence the plaintiff's possession was sufficient to sustain the action, and he was not required to establish a higher or better title."

In the present case there is a claim of title by both parties. Neither is in actual possession or occupancy. Both are in constructive possession. According to the majority, each would have a right to replevy from the other, and no inquiry of ownership or title is allowable.

One may have a slightly higher grade of constructive possession, but this could only be determined by a comparison of titles, which is not allowed.

Both have constructive possession, and, under the op-

inion of the majority, each may maintain replevin, but neither is required to show ownership or title on which constructive possession is based.

This is a new doctrine, not supported by reason or authority, and I most respectfully dissent from such holding.

In dissenting, I controvert none of the authorities cited by the majority, but, so far as they are applicable, they support the view expressed in this dissent.

The majority hold that title cannot be inquired into, and at the same time proceed to inquire into the title to see whether the plaintiff has constructive possession. Not only so, but they pass upon defendant's title and pronounce it champertous.

As to the difference between actual and constructive possession, and the different grades of constructive possession, the mass of authorities cited by the majority is wholly unnecessary. The entire subject is fully, ably, and exhaustively discussed in *Green* v. *Cumberland Coal & Coke Co.*, 110 Tenn., 35, 72 S. W., 459, but I think much of the reasoning of the majority opinion in this case is in conflict with the holding in the Cumberland Coal & Coke Case.

The case of *Mansfield* v. *Northcut*, 4 Cates, 536, 80 S. W., 437, holds that constructive possession is sufficient to sustain the action of forcible entry and detainer. But the action of forcible entry and detainer is maintained upon grounds different from an action of replevin. The

only question in an action of forcible entry and detainer is one of possession.

Title or ownership is not necessary to be shown. Only two questions are inquired into, viz:

(1) Who was in possession?

(2) How was that possession lost?

*Davidson* v. *Phillips,* 9 Yerg., 95, 30 Am. Dec., 393.

A trespasser who has no title whatever may recover from the true owner if his possession is disturbed. *Davidson* v. *Phillips,* 9 Yerg., 95, 30 Am. Dec., 393.

And the statute expressly provides that in such actions the estate or merits of the title shall not be inquired into. Shannon's Code, section 5103.

But in replevin, ownership and right to, possession must be shown, and not mere actual possession alone. *McFerrin* v. *Perry,* 1 Sneed, 317, and other cases cited, supra.

But I will pursue the matter no further; simply contenting myself with the statement that I am of the opinion the cases cited by the majority opinion do not .. .d to the result reached, but to the contrary.

I cite in support of this dissent the following authorities relied on by the majority: 24 Am. & Eng. Ency. Law, 486; Cobbey on Replevin, sections 353, 376, and other sections; *Cooper* v. *Watson,* 73 Ala., 252, 255; *Anderson* v. *Hapler,* 34 Ill., 436, 439, 85 Am. Dec., 318, and cases cited; *Stockwell* v. *Phelps,* 34 N. Y., 363, 90 Am. Dec., 710; *Page* v. *Fowler,* 28 Cal., 605, 610; *Rees* v. *Higgins,* 9 Kan. App., 832, 834, 61 Pac., 500; *Hart* v. *Vinsant,* 6 Heisk., 616, directly in point.