## BON AIR COAL, ETC., CO. *v.* PARKS.

### (*Nashville.* January 14, 1895.)

1. STATUTE OF LIMITATIONS. *Seven years' adverse possession.*

   Seven years' adverse possession of previously granted lands held under an entry, or in part under an entry, and remainder under grant thereon, but for less than seven years under the grant, invests the possessor, not with the fee, but with a possessory right to all the lands described in the entry. (*Post, pp. 265, 266.*)

   Cases cited and approved: Sims *v.* Eastland, 3 Head, 369; Ramsey *v.* Monroe, 3 Sneed, 329.

2. SAME. *Same.*

   A entered, as a naked trespasser, upon a large tract of land belonging to B, and inclosed and held forty or fifty acres of it for the term of seven years, openly, continuously, and adversely, thereby acquiring a possessory right to that portion of the land. After acquiring this possessory right, A obtained an entry for a larger portion of B's lands, but including the portion previously inclosed. A's possession was continued for seven years after this entry, but was never extended beyond his original inclosures.

   *Held:* A's possession extended to the boundaries of his entry, and invested him with a possessory right to all the land therein embraced. (*Post, pp. 266–272.*)

   Cases cited and approved: Ramsey *v.* Monroe, 3 Sneed, 330; Rutherford *v.* Franklin, 1 Swan, 320; Sims *v.* Eastland, 3 Head, 367.

   Cases cited and distinguished: Smith *v.* Lee, 1 Cold., 553; Coal Creek, etc., Co. *v.* Ross, 12 Lea, 9; Peck *v.* Houston, 5 Lea, 227.

---

### FROM WHITE.

---

Appeal from Chancery Court of White County. B. M. WEBB, Ch.

Bon Air Coal, etc., Co. *v.* Parks.

SMITH & DICKINSON and W. G. SMITH & SONS for Complainants.

JARVIS & STORY for Defendants.

McALISTER, J.  This is an ejectment bill to recover a tract of land situated in White County, and containing eleven hundred and seventy five acres.

Complainant shows that it acquired this land in 1886, by warranty deed from Dibrell, and deraigns its title through connected conveyances from the State of Tennessee.  Complainant's entry was made January 3, 1835, and his grant was issued August 6, 1836.  The grant of defendant, Welch, is dated February 9, 1889, and is based upon an entry made February 7, 1882.

The defendant avers that he has been in open, continuous, and adverse possession of said land for more than seven years next preceding the filing of this bill, and he relies upon the statute of limitations of seven years.  It appears that complainant's entry and grant were older than defendant's, and, constituting the better title, must prevail unless there has been an actual adverse possession of the land by the defendant.

The proof shows that the defendant, in August, 1874, without color of title, and as a mere naked trespasser, went into possession, inclosing forty or fifty acres of this land, and building double log houses thereon.  He has been in open, continuous, and adverse possession of this forty acres ever since,

cultivating it and occupying it as a home. The complainant's counsel, in argument, make a disclaimer as to this inclosure of forty acres, conceding that defendant has acquired a possessory right to it. The defendant's claim, however, is much broader than the possessory right merely to the forty acre inclosure. He claims not only the possessory right, but the absolute title to the entire tract, comprising eleven hundred and seventy-five acres. This claim is based upon the following theory: Defendant, as already stated, went into possession and inclosed forty acres of this tract in 1874, and, remaining continuously and adversely in possession of it, his possessory right to the forty acres became perfected in 1881, under the statute of seven years. In 1882, the defendant made his entry of the entire eleven hundred and seventy-five acre tract, and, continuing to remain in adverse possession of the forty acre inclosure for more than seven years before the filing of this bill, he now claims title to the full extent of the boundaries embraced in his entry. It has been heretofore stated that defendant procured a grant to be issued in 1889, based upon his entry made in 1882.

The Chancellor decreed that the defendant, by reason of his adverse possession of the land under his entry and grant, was vested with the title in fee to the lands described therein, and dismissed complainant's bill.

It will be observed that, between the commence-

ment of the adverse possession under the entry and the institution of the suit, more than seven years had elapsed, but not from the issuance of the grant. It is well settled that possession under a mere entry for seven years will not confer a fee simple title under the first section of the Act of 1819. *Sims* v. *Eastland*, 3 Head, 369. It is obvious that defendant had no color of title until his grant was issued in 1889; and, inasmuch as the grant cannot relate beyond its date as respects the operation of the first section of the Act of 1819, the defendant is in no better situation than if the grant had not issued. *Ramsey* v. *Monroe*, 3 Sneed, 329.

The only question, then, to be determined is, To what extent can the defendant avail himself of an adverse possession under the entry, as a defense to the complainant's claim by the provisions of the second section of the Act of 1819?

It is insisted on behalf of complainants that defendant's possession, under his entry, was simply a continuation of the possession of the forty-acre inclosure acquired in 1874, and that there was no extension of the original possession after the entry was made in 1882. Complainant's contention is that, in order to make the statute of limitation available, it must be shown that defendant, for some years before suit brought, held adversely, not merely the inclosure to which his right of possession had become perfected before his entry, but, by an enlargement of his original boundaries, had taken pos-

session of a part at least of the very land in dispute. It is claimed the occupation by defendant of the land to which he had perfected a possessory right was entirely compatible with complainant's title and constructive possession of the remaining land outside the boundaries of defendant's inclosure. In support of this position, defendant's counsel cite the case of *Smith* v. *Lee,* 1 Cold., 553, in which Judge McKinney said that, "in order to have brought himself within the operation of the principle contended for [the statute of limitations] the defendant must have enlarged his inclosure or have taken actual possession of some portion of the land common to both grants outside of his former improvements."

In the case in 1 Cold., the plaintiff "claimed under a grant for 277 acres, dated December 17, 1838. For several years preceding the date of the plaintiff's entry and grant, the defendant was residing upon, had inclosed and in cultivation, part of the land included in the entry and grant of the plaintiff, and continued to remain in possession. Subsequently to the issuance of plaintiff's grant, the defendant obtained a grant for 135 acres, which not only covered his previous improvement, but extended beyond and covered a considerable portion of unimproved land within the bounds of the prior grant to the plaintiff. The two grants covered in part the same land. The defendant, having remained in possession of his previous improvement upon the land (without enlarging or extending his possession)

for more than seven years from the date of his grant before suit was brought against him, claimed to hold adversely all the land within the boundaries of his grant. The plaintiff had no actual possession of any part of the land within the interference, and the question was, who had the better title to the land embraced within the conflict. In that case the Court held that the entry and grant under which the plaintiff claimed, so far as they interfered with or included any portion of the defendant's occupant improvements, were utterly void on the ground of failure to give the defendant thirty days previous notice, required by the Act of 1824. As already seen, the possession and improvements of the defendant were within the interference or conflict of these two grants; but, the plaintiff's grant being utterly void, for the reason already stated, in legal contemplation, the defendant's occupant improvements still remained vacant until subsequently entered by himself. In this view of the case," says Judge McKinney, "it is obvious that defendant, Smith, had no possession of any portion of the land covered by both grants. It is the invasion of the owner's rights by an actual possession of the land with intent to claim it against the owner, that lays the only proper foundation for the operation of the statute."

It was in this view that Judge McKinney used the language "that, to have brought himself within the operation of the principle contended for, the

Bon Air Coal, etc., Co. *v.* Parks.

defendant must have enlarged his inclosures or have taken actual possession of some portion of the land common to both grants. Until this was done, there could be no possible invasion of the plaintiff's rights—no actual possession within the limits which the law had affixed to his prior grant." That case is not to be assimilated to the case now being adjudged, since it distinctly appears in this case that defendant, Welch, had been in actual adverse possession of a portion of the land covered by his entry for more than seven years preceding this suit, and it is conceded that said possession was within the limits of the prior entry and grant of the plaintiff.

Counsel also rely upon the case of *Coal Creek Mining Co.* v. *Ross*, 12 Lea, 9. In that case it appeared that two of the parties, when they made their entry, as well as when they took out their grants, were in possession of portions of the land under older grants. It will be observed, in this connection, that when Welch took out his entry in 1882, he had been in possession of the land prior to that time as a mere naked trespasser, and had no deed, grant, or color of title.

The Court held in the 12 Lea case that a continuance of possession shown in that case would not be a possession under the new grant. The reason, we observe, was that the law still referred that possession to the limits of the old grant. The Court continues: "In order to get a perfect title to the

extent of the boundaries of the new grant, there must have been an intentional extension of the inclosure and independent improvements openly made under a claim of right by virtue of the new grant.'' To the same effect is the case of *Peck* v. *Houston*, 5 Lea, 227. But none of these cases support the contention of defendant's counsel. The cardinal differential attribute of these two cases is that the party invoking the protection of the statute of limitations had already been in possession of a part of the land under an old grant, and, after taking out a new grant, failed to extend his possession. In such a case, the law conclusively presumes that the party is still in possession under the old grant. But these cases are wide of the mark in this case. The defendant, relying upon the statute of limitations in this case, had been in adverse possession of the land for seven years prior to his entry, but it was a mere naked possession, without a deed, grant, or other assurance of title. In 1882 he made his entry of 1,175 acres, covering his forty-acre inclosure, and remained in possession of the same inclosure, without extending his possession, for seven additional years. Now, the contention of complainant's counsel is that the defendant's possession cannot be referred to his entry, for the reason he had been in possession for seven years prior to his entry. This is true; but it was a mere naked possession, without color of title. If defendant had had a color of title at that time, his possession would be limited to the bound-

aries of that title, and would not be covered by
his subsequent entry, without an extension of his
possession.

We think this case comes within the principle laid
down by Judge McKinney in *Ramsey* v. *Monroe*, 3
Sneed, 330.    In that case it appeared that, on May
22, 1837, a grant was issued to the plaintiff for a
tract of land lying in Grundy County, containing
1,000 acres.    Afterwards, to wit, on the fourth of
March, 1845, one Lazarus Adams made an entry
for 300 acres of land, lying entirely within the
bounds of the foregoing grant to the plaintiff, Mon-
roe.    The defendant, Adams, took possession under
said entry and continued to hold, by himself and
vendors, for more than seven years prior to the
commencement of the suit.    It appeared that two
fields were inclosed within the bounds of the de-
fendant's entry which had been used and occupied
more than seven years before the institution of the
suit.    On the other hand, there had been no pos-
session on the part of the plaintiff Monroe of any
part of the land within the boundaries of his grant.
The Court held that the defendant, by virtue of
his entry and seven years adverse possession, ac-
quired no title to the land, under the first section
of the Act of 1819, for the reason that a mere
entry is no color or assurance of title purporting
to convey an estate in fee.    It was held, however,
that defendant had acquired a possessory right, un-
der the second section of the Act of 1819, not

merely to the two inclosed fields, but to the full extent of the boundaries described in the entry.

To the same effect is the case of *Rutherford* v. *Franklin, Lessee*, 1 Swan, 320. In that case the Court held that "if a party take possession and hold it adversely by virtue of a title bond, or other instrument vesting the possessor with an equitable interest only, the possession so taken extends to the metes and bounds described in the instrument under which it is taken, so that, although a title is not vested in him, yet, if it be so held for several years, he is protected to the entire extent of such possession." So also in *Sims* v. *Eastland*, 3 Head, 367, the Court said, viz.: "The entry of Gibson was a special one, and would extend the title by possession under the second section (Act of 1819) to the extent of its calls and boundaries." We think these authorities are conclusive of this case.

The decree of the Chancellor is modified and affirmed.