BELL v. NORTH AMERICAN COAL & COKE CO.

(Circuit Court of Appeals, Sixth Circuit.  June 18, 1907.  On Rehearing, October 15, 1907.)

No. 1,636.

1. WASTE—NATURE OF REMEDY—EQUITY.

Equity has jurisdiction of a suit to restrain waste by the cutting and removal of valuable timber, and incidentally for an accounting for waste already committed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waste, § 16.]

2. ADVERSE POSSESSION—POSSESSION BY TENANT—EXTENT.

When a tenant is placed in possession of a definite part of a larger tract of land, the possession will not avail the landlord beyond the part so claimed and held; but, if one claiming under an assurance of title defining boundaries place a tenant in possession without limiting him to any definite part, the tenant's possession will extend to the landlord's boundaries, although the land actually occupied is but a small part of the whole.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adverse Possession, § 585.]

3. SAME—TENNESSEE STATUTE.

Under Shannon's Code Tenn. § 4456, possession of land under assurance of title, if continued for seven years, operates not only to bar an action on a superior title, but to devest that title and vest it in the adverse holder; but, on the other hand, possession without color of title continued for seven years gives a mere right to defend against the title so long as the possession is actual and continuous, under section 4458, which provides that no person shall have any action for any lands, but within seven years after the right of action has accrued, and such right is lost the moment the possession is abandoned.  Hence, under such statute as construed by the Supreme Court of the state, where one in possession of land without color of title attorned to another who had made entry from the state of a definite tract, including his own, and agreed to hold possession of the whole for his landlord, the effect was an abandonment of his own possession, and from that time his possession was that of his landlord and referable to the entry, and extended to the whole tract, although there was no extension of his actual inclosure.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

On Rehearing.

4. PUBLIC LANDS—ENTRY OF STATE LANDS—TENNESSEE STATUTE.

The provision of Acts Tenn. 1824, c. 22, § 6, making unlawful an entry of state land on which another resided or which was occupied by him,

unless he was given 30 days' notice, was intended solely for the protection of the occupier, by enabling him to exercise his prior right to enter the land; and an entry made without giving such notice to an occupier of part of the land is void only as to such part. The notice might, moreover, be waived by an occupier, and was so waived in a case where for a valuable consideration he agreed to attorn to the entryman and hold possession for him until the grant was secured.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

John F. McNutt, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a bill to restrain trespass and quiet title to a large tract of mountain land lying in Cumberland county, Tenn. The complainant asserted title and possession of the lands included in several grants issued originally to Thomas B. Eastland, under whom by mesne conveyances the complainant claimed. These grants were from the state of Tennessee, and bore date of 1836. The bill averred that the defendant, Bell, claimed the lands included within grants Nos. 12,758, 12,769, 12,770, and 12,771, being junior grants, within the boundaries of senior grants to Eastland. It was averred that the defendant was trespassing by cutting valuable timber and removing same to the irreparable injury of the lands. It also charged that the defendant was insolvent. The answer disclaimed any title or interest in the lands claimed by complainant outside the limits of grant No. 12,771, issued May 26, 1874, to defendant, containing, by survey, 1,077 acres. It denied that the complainant had any possession of the lands inside said grant, denied that he was now or had been cutting timber from said land "for a long time," and denied insolvency. The answer asserted an actual adverse possession of the lands within said grant beginning at date of its survey made in March, 1872, and pleaded and relied upon the Tennessee statute of limitations of seven years. The court below found that jurisdiction existed because of the repeated trespasses of the defendant, and that the title of the complainant was the superior title to the lands included within the grant to defendant of 1874, except as to a parcel of 100 acres inside of said grant, designated as the "Bolin Survey," which said 100 acres had been held adversely for more than seven years under color of title by said Bolin or those who held under him.

There was evidence showing that the defendant had cut and removed valuable timber from the lands included within his junior grant. The extent of this cutting does not appear, but sufficient is shown to justify the assumption of jurisdiction for the purpose of enjoining trespass and an accounting. The case on its facts falls within Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 53 C. C. A. 551.

Complainant's title, being under the elder grants, must prevail, unless, through adverse possession under his junior grant, the latter has become the better. Beyond the possession called the "Bolin possession" neither party has had any such open, notorious, and continuous adverse possession within the interlap of the conflicting grants as will

affect the results. The case must turn here, as it did below, upon the extent, character, and effect of the Bolin possession. The facts, as we find them, which bear upon this possession, are these: Under an entry made March 14, 1872, by one Jackson, assignor of Bell, the latter made a survey preliminary to applying for a grant. Upon this survey, dated March 18, 1872, a grant duly issued to Bell, dated May 26, 1874, for 1,077 acres, more or less, being the grant under which Bell claims title. This grant overlaps parts of two of complainant's Eastland grants. When Bell made this survey he found one Samuel Bolin living within the lines of his survey. Bolin had a house and barn, an orchard of grown apple trees, and about 15 or 20 acres in cultivation. The precise beginning of Bolin's occupation is not shown, but enough appears to show that Bolin had lived upon his occupation, claiming and holding it for himself for as much as 10 to 15 years. The evidence seems to establish that his original possession was taken under a parol arrangement with one Brown, who claimed to own lands in the vicinity. It turned out, however, that, if this was so, Bolin did not plant himself upon any land claimed or owned by Brown, and it is certain he had no deed or other instrument from Brown or any one else which would constitute color of title under the Tennessee statute of limitations. When Bell found Bolin within the Jackson entry and within the lines of his survey, he made an arrangement with him by which he attorned to Bell and agreed to hold for Bell the entire body of land described by the Bell survey and perfect Bell's title for him. Bell, upon his part, agreed that when, through such possession, his title should be made good, he would for a nominal consideration convey to Bolin 100 acres, which should include his occupation. That Bolin might know the lines of the 100 acres, it was then run out and a certificate of survey, made and signed by him as surveyor, given to Bolin. Bolin's possession covered lands within each of the two adjacent grants of complainant which constitute its superior legal title. The learned circuit judge seemed to doubt the scope of the agreement between Bell and Bolin, but we find from the direct testimony of Bell and the subsequent admissions of Bolin, now dead, that the distinct understanding of both parties was, as we have stated it above, and that from that time, the date being fixed by date of the survey in March, 1872, Bolin held and claimed to be holding the Bell grant for Bell, and that when Bell's title should be made good he was to have a deed to 100 acres. When a tenant is placed in possession of a definite part of a larger tract of land, the possession will not avail the landlord beyond the part so claimed and held. If, however, one claiming under assurance of title defining boundaries, place a tenant in possession without limiting him to any definite part, the tenant's possession will extend to the landlord's boundaries, although the land actually occupied will be but a small part of the whole. Treece v. American Ass'n, 122 Fed. 598, 58 C. C. A. 266; Ross v. Cobb, 9 Yerg. (Tenn.) 463; Massengill v. Boyles, 11 Humph. (Tenn.) 113; and Elliott v. Pearl, 10 Pet. 443, 9 L. Ed. 475. But it is said that before Bolin attorned to Bell he had for more than seven years been in the open, continuous, and adverse possession of some 10 to 20 acres

of this land, and that he did not after agreeing to hold for and under Bell extend his actual possession beyond his original occupation, and that for this reason his subsequent possession as Bell's tenant did not inure to Bell's benefit beyond the inclosures. The argument is that Bolin had already acquired a defensive right of possession to the land actually inclosed by virtue of the second section of the Tennessee act of 1819, now section 4458, Shannon's Tenn. Code, which provides that:

"No person, or anyone claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

A possession without color of title, though continued for seven years, does not vest title, but is a mere right to defend against the title so long as the possession is actual and continuous, and it is lost the moment possession is abandoned. Marr v. Gilliam, 1 Cold. (Tenn.) 490, 510; Crutsinger v. Catron, 10 Humph. (Tenn.) 24. On the other hand, possession under assurance of title defining the metes and bounds extends the possession to the bounds, and, if continued for seven years, operates not only to bar an action by the superior title, but to divest that title and vest it in the adverse holder. Shannon's Tenn. Code, § 4456; Bleidorn v. Pilot Mountain C. & M. Co., 89 Tenn. 166, 15 S. W. 737; Tenn. & Pacific Ry. v. Mabry, 85 Tenn. 47, 1 S. W. 511. It is well settled by the Tennessee decisions that, if one go into possession under color of title and hold for seven years, and thereafter acquire an assurance of title to a larger tract which includes the smaller, a possession continued within the bounds of the smaller parcel, without an extension outside of its limits, will not be a possession under the new grant or other assurance of title. In such case a continual possession will be referable to the original assurance of title only. The reason is that, so long as the adverse possessor confines himself to the limits of the smaller parcel to which he has acquired title by adverse possession under color, there would be no actual invasion of the title and right of the superior title to the lands outside of that parcel, but a possession consistent with the adverse possessor's legal rights. Smith v. Lee, 1 Cold. (Tenn.) 549, 552–3; Peck v. Houston, 5 Lea, 227; Coal Creek Co. v. Ross, 12 Lea, 1, 9; Bon Air Coal Co. v. Parks, 94 Tenn. 263, 29 S. W. 130. But this principle is not applicable when the original adverse possession of the smaller parcel was not under an assurance of title defining metes and bounds. Bolin did not become vested with any title by reason of his occupation before Bell's grant issued. He had at most a mere naked possessory right which would be lost by abandonment. When, therefore, he ceased to claim for himself and attorned to Bell, and there was no reason why he should not do so, however great his folly in building up a title for another when he might have ripened a title for himself by taking out a grant or obtaining some assurance purporting to convey title, Bolin's possession became thereafter the possession of Bell, and, from the date of Bell's subsequent grant, a possession of the entire grant, although there was no extension of his actual inclosure. This distinction, whether a good one or a bad one, is clearly the law of Tennessee, and was made and enforced in the case of Bon Air Coal Co. v. Parks,

cited above. In that case, as in this, the defendant, Parks, went originally into possession of a part of the land in litigation, not under color of title, but as a mere trespasser, and inclosed and cultivated some 40 or 50 acres for more than seven years. He then made an entry of 1,175 acres, which include this original occupation and remained in possession under this entry, without extending his actual possession, for another period of more than seven years, when he obtained a grant. A possession under an entry, although not an assurance of title, will, if sufficiently definite to point out the land intended tô be appropriated, be protected under the second section of the act of 1819 (Shannon's Code, § 4458), to the extent of its calls. Ramsey v. Monroe, 3 Sneed (Tenn.) 329.

As the defendant in the Bon Air Case had not had possession long enough under his grant to avail him unless he could connect his possession under his entry, the question arose whether he had had any possession under that entry outside of his actual possession which would avail him as a defense. For the complainant it was contended, there as here, that defendant had never extended his possession beyond his original inclosures, and that when he took out his entry, which included his original inclosures, he had acquired a right of possession and could not have been ejected by the owner of the title. But it was held that, as the prior possession had not been under color of title or any document defining the limits of his possession, his subsequent possession would be referable to his entry and be a possession coextensive with the limits defined by that entry, and the case distinguished from the cases relied upon to prevent such a result by the fact that in each of them the prior possession had been under color of title. This case is indistinguishable in principle from the one at bar, and must be controlled by it.

The result is that the decree of the court below must be reversed, with direction to dismiss the bill.

## On Rehearing.

This case comes on now upon a petition to rehear. Acts Tenn. 1824, c. 22, § 6, provides as follows:

"Be it enacted, that, hereafter, it shall not be lawful for any person to enter any land, in any of the entry-takers' offices, established by the act to which this is a supplement, on which land another resides, or cultivated by another, until such person shall have given, in writing, at least thirty days' previous notice, to the person residing on, or cultivating, said land, of his intention to enter the same; and any entry made, or grant obtained, contrary to the provisions of this section, shall be utterly void in law and equity."

It is now insisted that no notice was given to Bolin as occupier in possession at the date of the entry and survey upon which Bell's grant issued, as required by the act quoted above, and for this reason Bell's grant is null and void. The whole purpose of the act of 1824 was to apprise the occupier of an intention of entering the land, that he might avail himself of his right to secure it to himself by making first entry. Wilson v. Hudson's Lessee, 8 Yerg. (Tenn.) 398, 410. Neither does the object or the purpose of the act require that the grant shall be held void to any greater extent than the actual occupa-

tion existing at the time of the entry. It is therefore well settled that an occupier without color of title is protected by the act of 1824 only to the extent of the land actually, occupied and inclosed, and that the grant is perfectly valid outside of such occupancy. Den v. Nixon, 10 Yerg. (Tenn.) 518; Horn v. Childress, Meigs (Tenn.) 102; Smith v. Lee, 1 Cold. (Tenn.) 549; Peck v. Houston, 5 Lea (Tenn.) 227, 230. Nevertheless, if the Bell grant is void to the extent of Bolin's actual occupancy, he must fail in his defense, for he has had no actual occupation outside of the Bolin occupancy. There is no evidence of a written notice to Bolin of intent to enter the land included in Bolin's inclosure; but there is abundant evidence that Bolin knew that Bell was making a survey with a view to either exclude his inclosed land from an entry made or to be made for Jackson, and that with this knowledge that he made an agreement with Bell by which his occupancy was to be included in the entry grant, and by which he was to remain in possession and hold the entire grant for Bell. The requirement of the act of 1824, as well as of subsequent acts upon the same subject, that one proposing to make an entry of public lands shall give 30 days' written notice of his intent to any person in actual occupation, being exclusively for the benefit of the occupier, may be waived by him. Wilson v. Hudson and Horn v. Childress, both cited above. The facts disclosed by this transcript make a plain case of waiver of written notice.

The evidence does not make it clear whether Bolin's attornment to Bell was made before or after the Jackson entry. The Bell grant recites the Jackson entry as having been made March 14, 1872, and the survey as made March 18, 1872. But it is plain a survey was made prior to Jackson's entry, for the land entered is described precisely as in the grant. Counsel for the North American Coal Company, in their original brief, took the position that the entry was not in fact made until after a survey by Bell. This they concluded from a correspondence of the description in the entry with that in the survey and from the fact that the survey of 100 acres for Bolin made by Bell describes this 100 acres as being within an earlier entry made by Armstrong Martin, and does not mention or refer to any entry made by Jackson. In this conclusion we concur. The certificate of survey given by Bell to Bolin is not dated, and we infer that prior to the actual date of Jackson's entry Bell made his survey for an entry to be made by Jackson, and at the same time ran out 100 acres for Bolin, which included Bolin's occupancy. Subsequently Jackson's entry was made, and then a certificate of survey from the lines previously run was filed, in order to comply with the statute and procure a grant. We therefore conclude that prior to Jackson's entry Bolin was apprised that Bell's purpose in making a survey was to enter the lands surveyed in Jackson's name. Bell testified that his purpose was to exclude from Jackson's proposed entry all lands which he should find actually occupied by a settler. That he would have excluded Bolin's occupancy, but for the agreement he made with him, there is no reason to doubt. That agreement was conditional upon his obtaining an assignment from Jackson of the entry to be made in his name, that Bolin should remain upon and hold under Bell until Bell's title should become

the best title, and that also Bolin would pay him a small agreed sum as his proportion of the expense of the survey. Bolin from the time of that agreement held continuously for Bell for a period of more than seven years after date of Bell's grant and before suit brought. This agreement induced Bell to include Bolin's occupancy with the entry and grant under which he claims, and also induced him to go on and obtain an assignment from Jackson of his entry, and to obtain a grant, and finally to convey to Bolin's heirs 65 acres, including Bolin's occupancy, after Bolin's possession had, as he supposed, ripened his title under his junior grant. That he conveyed only 65 acres, instead of 100 acres, to Bolin's heirs, is of no consequence to the defendant in error here. He justifies his breach of good faith by claiming that Bolin did not pay him the whole of the little sum that he owed as his proportion of the cost of the survey of the 100 acres. He may not be clear of liability to Bolin's heirs for his failure to convey the remainder of the 100 acres he agreed to convey. But that may be set on one side as of no moment in this case; Bolin's heirs not being before the court. This agreement made by Bolin with the knowledge of the purpose of Bell to procure a grant which would include his occupancy operates as an estoppel, and in law was a waiver of the written notice required under the act of 1824. If thereby Bolin estopped himself to rely upon want of notice as a defense against Bell's subsequently acquired title, it is plain that third persons can stand in no better position.

Upon another ground the result would be the same. The agreement between Bell and Bolin, in substance and legal effect, was a sale of his occupant right upon a sufficient consideration, and operated to extinguish it or pass it to Bell, we need not say which. That it was in parol was of no fatal consequence. In Tennessee a parol sale of lands is merely voidable, and not void. Third parties will not be allowed to object to a parol contract which the parties between themselves consider operative and valid. Brakefield v. Anderson, 3 Pickle 87, Tenn. 206, 211–212, 10 S. W. 360; King v. Coleman, 98 Tenn. 561, 571, 572, 40 S. W. 1082. This question as to the act of 1824 was not made in the court below, nor was it mentioned in the opinion of Judge Clark, nor in the opinion heretofore handed down by this court; but it might have been made, and we have, therefore, given it consideration, with the result that we find Bolin's right as occupier was waived at the time of the survey and the agreement subsequently carried out by the parties.

. The other grounds presented for a rehearing are a mere reargument of the points already decided.

Petition will be dismissed.