MATILDA G. KITTEL *v.* T. M. STEGER, Trustee.

(*Nashville.*    December Term, 1908.)

1. **LAND LAWS.** Oldest of conflicting grants carries the title.
   The oldest of several conflicting grants carries the title. (*Post,* p. 403.)

2. **ADVERSE POSSESSION.** Of part of tract extends to boundaries described in deed, when.
   Where actual adverse possession is held on a part of a tract of land previously granted by the State, under a deed conveying the land in fee by definite boundaries, the possession of the claimant under such deed is extended by construction of law to the limits of the boundaries described in the deed, tolling the title to all disputed land, or conflicting claims therein, not covered by a counter possession on some part thereof, whether the claim or defense, as the case may be, is made either under the first section or the second section of Acts 1819, ch. 28. (*Post,* pp. 405, 406.)

   Acts cited and construed:    Acts 1819, ch. 28, secs. 1 and 2.

   Cases cited and approved: Jones v. Perry, 10 Yerg., 59; Brown v. Johnson, 1 Humph., 261; Pickens v. Delozier, 2 Humph., 400; Rutherford v. Franklin, 1 Swan, 321; Ramsey v. Monroe, 3 Sneed, 329; Coal Co. v. Parkes, 94 Tenn., 263; Turnage v. Kenton, 102 Tenn., 328; Green v. Coal & Coke Co., 110 Tenn., 35; Mansfield v. Northcut, 112 Tenn., 536; Lieberman v. Clark, 114 Tenn., 117, and citations on pages 132-141.

3. **SAME.** Same. Of part of tract for seven years perfects title to boundaries of deed, when.
   Adverse possession of some part of a tract of land, previously granted by the State, for more than seven years, under a deed conveying the land in fee by definite boundaries, though not on the part in dispute, extends to the boundaries of the deed, and is not confined to the actual inclosure. (*Post, p.* 407.) See citation of cases under the second headnote.

Kittel v. Steger.

---

**4. SAME. Under unregistered deed for more than seven years creates a good defensive title.**

Adverse possession of land under an unregistered deed for more than seven years creates a good defensive or possessory title. (*Post, pp.* 407-412.)

Code cited and construed: Secs. 4456-4458 (S.); secs. 3459-3461 (M. & V.); secs. 2763-2765 (T. & S. and 1858).

Acts cited and construed: Acts 1819, ch. 28, secs. 1 and 2; Acts 1895, ch. 38.

Cases cited and approved: Dyche v. Gass, 3 Yerg., 397; Dunlap v. Gibbs, 4 Yerg., 94; Neal v. College, 6 Yerg., 190; Jones v. Perry, 10 Yerg., 59, 81, 82; Brown v. Johnson, 1 Humph., 261; Wallace v. Hannum, 1 Humph., 443, 450, 451, 452; Chilton v. Wilson, 9 Humph., 399, et seq., James v. Patterson, 1 Swan, 311; Rutherford v. Franklin, 1 Swan, 321; Stewart v. Harris, 2 Swan, 656; Ramsey v. Monroe, 3 Sneed, 329; Meriwether v. Vaulx, 5 Sneed, 307; Lincoln v. Purcell, 2 Head, 142; Haynes v. Jones, 2 Head, 372; Sims v. Eastland, 3 Head, 368; Mulloy v. Paul, 2 Tenn. Chy., 156, 158; Sanders v. Everett, 3 Tenn. Chy., 520, 524; Sharp v. Van Winkle, 12 Lea, 18, 19; Erck v. Church, 87 Tenn., 575, 579; Coal Co. v. Parkes, 94 Tenn., 263.

Case cited and distinguished: Byrd v. Phillips, 120 Tenn., 14, 29, 30.

**5. SUPREME COURT. Will, upon reversal, give such judgment as the circuit judge should have given, when.**

Where the findings of the facts and law in an ejectment suit, tried before the circuit judge, without the intervention of a jury, are reduced to writing at the request of the parties, the supreme court will, upon reversal, without remandment, give the proper judgment that should have been given by the circuit judge. (*Post, pp.* 402, 403, 412.)

121 Tenn—26

FROM VAN BUREN.

Appeal in error from the Circuit Court of Van Buren County.—JOSEPH C. HIGGINS, Judge.

HENRY H. INGERSOLL, for Kittel.

JAMES M. BRADY and W. T. SMITH, for Steger.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is an action of ejectment, brought in the circuit court of Van Buren county, to recover about two hundred acres of land described as follows: Beginning at a stake painted white, where the west boundary line of grant, No. 6808, to J. A. Lane for one thousand acres crosses the south boundary line of grant, No. 9209, granted to James and O. H. P. Seals for one thousand acres, and running thence east to the said Seals line twenty-two poles to the center of Glade creek; thence down said creek as it meanders to its mouth; thence down Bee creek as it meanders to the west boundary line of grant, No. 6808; thence south with said line one hundred and fifty poles to the beginning.

The general issue was interposed by the defendant below, who is the plaintiff in error here.

The case was tried before Hon. Joseph C. Higgins, circuit judge, who, at the request of the parties, reduced his findings of fact and law to writing, and the case comes before us on these findings; there being no bill of exceptions.

It is unnecessary to set out these findings in full. We shall give only the substance of them, so far as they affect the questions now before the court for disposition.

His honor rendered judgment on these findings in favor of the plaintiff below.

From this judgment the defendant below brought the case to this court by writ of error, and has here assigned errors. In what we shall hereafter say we shall dispose of these various errors assigned as far as may be necessary.

In order that the findings referred to may be more easily and fully understood, we attach to this opinion a map, shown on page 404, which we find with the brief of the counsel for defendant in error. Its accuracy is not questioned by counsel for plaintiff in error, and it presents the controversy more plainly and simply than does the blue print found in the record.

From section 1 of the findings it appears that the Groves grant was the oldest of the three grants mentioned, and hence carried the better title, or, as we should more properly say, the title. It also appears from this finding that the grantees under the Seals grant, No. 9209, tolled the title, or drew to themselves

Plat Showing Relative Loc[ation of]
Grants 6,808-9,209 and 11,[070, and]
Location of Improvemen[ts made]
by James Seals and Ot[hers in-]
side of Grant No. 9,209.

Reference Notes:

1.—Old place settled by J[ames]
Seals prior to 1846.
2.—Old field extending [into]
grant No. 11,070.
3.—Old place settled by [James]
Seals prior to 1846.
4.—Old field cleared by [James]
Seals about 1848.
5.—Old field cleared by [James]
Seals prior to 1840.
6.—Old place settled by J[ames]
Seals prior to 1860.
7.—Old field cleared about [1848.]
B.—Barn.    H.H.H.—Hou[se.]
K.—New field cleared by [James.]

Reference:

X.—Land covered by litigation.
In case of T. M. Steger,
Trustee, v. Kittel.
Bounded: North and east by Bee
creek and Glade creek.
Bounded: South by south bound-
ary of grant No. 9,209.
Bounded: West by west boundary
of grant No. 6,808.

the title, carried by the Groves grant, to the extent of the boundaries of said grant, No. 9209; that grant lying wholly within the Groves grant. It is also apparent from this finding that the land in controversy in the present case lies wholly within both the Groves grant and the said Seals grant, No. 9209, and therefore that the grantees under No. 9209 became the owners of the title to the land here in controversy.

From sections 2, 3, 10, and 11, of the findings it is apparent that the defendant in error and those under whom he claims tolled the Seals title to the land in controversy in the present case, since it is found as a fact that his predecessors in title held adverse possession for more than seven years under deeds purporting to convey a fee of a large body of lands, including the small boundary in controversy. It is immaterial that the actual possession (house, or fenced field, as the case may be) was not on what is now the disputed land, inasmuch as the rule is undoubted that, where an actual possession is placed upon a tract of land covered by a deed or other instrument purporting to convey land by a definite boundary, the possession of one claiming under such instrument is extended by construction of law to the limits of the boundaries described in the instrument. This is true, whether the claim, or defense, as the case may be, is made either under the first section or the second section of the act of 1819 (2 Scott's Laws 1715-1820, pp. 482, 483, c. 28). *Lieberman* v. *Clark,* 114 Tenn., 117, and authorities

cited and discussed on pages 132 to 141, inclusive, 85 S. W., 258, 69 L. R. A., 732. And among these, particularly, see *Green* v. *Cumberland Coal & Coke Co.,* 110 Tenn., 35, 72 S. W., 459; *Mansfield* v. *Northcut,* 112 Tenn., 536, 80 S. W., 437. See, also, *Jones* v. *Perry,* 10 Yerg., 59, 30 Am. Dec., 430; *Rutherford* v. *Franklin,* 1 Swan, 321; *Brown* v. *Johnson,* 1 Humph., 261; *Pickens* v. *Delozier,* 2 Humph., 400; *Ramsey* v. *Monroe,* 3 Sneed, 329; *Bon Air Coal Co.* v. *Parkes,* 94 Tenn., 263, 29 S. W., 130; *Turnage* v. *Kenton,* 102 Tenn., 328, 52 S. W., 174.

It is clear, from the fourth, fifth, sixth, and eighth findings, that although the title papers, under which plaintiff in error and her predecessors in title claim, in fact covered the land in controversy, yet that the possession taken and dominion really exercised thereunder only extended to the creek as the western limit thereof, and did not cover the land in controversy.

From what has already been said, it follows that defendant in error and his predecessors in title had by operation of the statute of limitations acquired the title to the land in controversy, and that this was the status in 1899, when the plaintiff in error established an adverse possession upon said land at the point marked K on the map. Defendant in error and his predecessors in title had not only tolled the Groves title as to this land, but had as to it nullified the intervening Lane grant, No. 6808, under which plaintiff in error claims.

With the title in this situation, it appears from the seventh and ninth sections of the findings that the plaintiff in error established a possession at K within the land now in controversy, by inclosing four acres, and maintained that inclosure adversely and openly for more than seven years, before action brought.

The first question that arises at this point is whether the adverse possession extended beyond the limits of the inclosure to the boundaries set out in the deed claimed under, or whether it was confined to the inclosure.

It appears from the fifth, seventh and ninth findings that the plaintiff in error claimed adverse possession under the Carpenter deed, made in March, 1887. That deed covered the lands in controversy. The inclosure at K lay within this deed, and we are of the opinion that adverse possession extended to the limits of the deed, and so covered all of the land sued for in the present case.

The Carpenter deed, however, was not registered. This brings us to the next inquiry; that is, whether the fact of nonregistration prevented plaintiff in error, defendant below, from relying upon the deed under the second section of chapter 28 of the Acts of 1819 (2 Scott's Laws 1715-1820, p. 483), in full defense of the action brought by defendant in error for the recovery of the land.

We are of the opinion that it did not. The contrary view is based on chapter 38, p. 54, of the Acts of 1895.

This act declared that section 2763 of the Code of 1858 (Shannon's Code, sec. 4456) should be amended by adding, at the end of the section, the following language: "But no title shall be vested by virtue of such adverse possession, unless such conveyance, devise, grant, or other assurance of title, shall have been recorded in the register's office for the county or counties in which the land lies during the full term of said seven years' adverse possession."

The second section of the act declared that section 2764 of the Code of 1858 (Shannon's Code, sec. 4457) should be amended by inserting in that section, after the words "in possession," the following words: "Under recorded assurance of title."

The two sections of the Code above referred to are as follows:

Section 2763 reads:

"Any person having had, by himself or those through whom he claims, seven years' adverse possession of any lands, tenements, or hereditaments, granted by this State, or the State of North Carolina, holding by conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, without any claim by action at law or in equity, commenced within that time and effectually prosecuted against him, is vested with a good and indefeasible title in fee to the land described in his assurance of title."

Section 2764 reads:

"And on the other hand any person, and those claiming under him, neglecting for the said term of seven years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted against the person in possession, as in the foregoing section, are forever barred."

The next section (2765) reads:

"No person, or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

Owing to the great similarity between sections 2764 and 2765—indeed, their apparent identity in substance and legal effect—both have been supposed to refer to and cover the defense allowed under the second section of chapter 28 of the Acts of 1819. This view has been current to a considerable extent among the members of the bar of the State, and has appeared in several of our cases. This is, however, a mistaken view. A resort to the original act shows that section 2764 was taken from the first section of the act, while section 2765 was taken from the second section of the act. Sections 2763 and 2764 are to be construed together; the first of these barring the right, and the second barring the remedy. Section 2765, taken from the second section of the Act of 1819, simply bars the remedy. It does not bar the right. The second section of the act of 1819 seems to have been construed in our earlier cases as having a broader scope than the first section; that is,

as applying to a larger class of cases. *Wallace* v. *Hannum*, 1 Humph., 443, 450, 451, 452, 34 Am. Dec., 659. And see *Brown* v. *Johnson*, 1 Humph., 261. In *Wallace* v. *Hannum*, the great similarity between the provisions of the two sections is referred to and commented on; but it is held that, notwithstanding their great similarity, they are in fact different. As illustrating the broad scope of the second section of the act of 1819, see the following, which we add, not as a full, but only a partial, list of the cases bearing on the point, viz.: *Dunlap* v. *Gibbs*, 4 Yerg., 94; *Neal* v. *East Tenn. College*, 6 Yerg., 190; *Jones* v. *Perry*, supra; *Brown* v. *Johnson*, supra; *Wallace* v. *Hannum*, supra; *James* v. *Patterson*, 1 Swan, 311, 55 Am. Dec., 737; *Rutherford* v. *Franklin*, supra; *Ramsey* v. *Monroe*, 3 Sneed, 329; *Meriwether* v. *Vaulx*, 5 Sneed, 307; *Haynes* v. *Jones*, 2 Head, 372; *Sims* v. *Eastland*, 3 Head, 368; *Sharp* v. *Van Winkle*, infra; *Bon Air Coal Company* v. *Parkes*, 94 Tenn., 263, 29 S. W., 130; *Sanders* v. *Everett*, 3 Tenn. Ch., 520, 524. And compare *Chilton* v. *Wilson*, 9 Humph., 399 et seq.

We have made a very extensive examination of our authorities for the purpose of discovering how section 2765 has been referred to. In most of the cases the court speaks generally, even since the enactment of the Code of 1858, simply of the second section of the act of 1819, without referring to the section of the Code supposed to embody it; but we find that Mr. Justice Cooper, who was one of the compilers of the Code, in his edition of the Tennessee reports, uniformly refers in his head-

notes to section·2765 as embracing the second section of the act of 1819. See the syllabus in *Dyche* v. *Gass,* 3 Yerg., 397; *Dunlap* v. *Gibbs,* supra; *Neal* v. *East Tennessee College,* supra; *Ramsey* v. *Monroe,* 3 Sneed, 329; *Lincoln* v. *Purcell,* 2 Head, 142, 73 Am. Dec., 196. He indicates the same view in the text, in a general way, in the case of *Sharp* v. *Van Winkle,* 12 Lea, at pages 18 and 19. See, also, remarks in *Sanders* v. *Everett,* 3 Tenn. Ch., 524. In *Mulloy* v. *Paul,* 2 Tenn. Ch., 156, 158, he refers, on the latter page, to sections 2763 and 2764 as covering the first section of the act of 1819, and to· section 2765 as covering the second section of that act. See, also, *Erck* v. *Church,* 87 Tenn., 575, 579, 11 S. W., 794, 4 L. R. A., 641, to same effect. Our conclusion, therefore, is, as above indicated, that the act of 1895 did not have any effect upon section 2765. It did not purport in terms to amend that section, and no effect was produced upon it by the amendment of section 2764.

It may seem anomalous that an unregistered deed could not be used under section 2763, and yet might be good as supporting a defensive right under section 2765. However, this precise state of the matter was contemplated in *Jones* v. *Perry,* supra. At the same time that case was decided the court had not yet determined, as it subsequently did in the case of *Stewart* v. *Harris,* 2 Swan, 656, that an unregistered deed would be operative under the first section of the act of 1819, but held that question in reserve. Considering such matter, the court said in that case:

"The possession having been proved, the next question is, how and against whom does it operate? The deed executed by the Joneses to the Steels was dated on the 23d of May, 1826, and registered the 25th of February, 1829. This suit was commenced the 24th day of February, 1835. Seven years did not elapse from the time the deed was registered up to the time of the commencement of the suit. Whether, therefore, the first section of the act of limitation of 1819 (chapter 28) will operate to bar the complainant's claim is a question of some doubt, and which it is not necessary to decide. We shall therefore consider the case in reference to the second section of said act."

The court thereupon proceeded to hold that the defense was good under the second section. 10 Yerg., 81, 82.

What was said by the court upon this subject in *Byrd* v. *Phillips,* 120 Tenn., 14, 29, 30, 111 S. W., 1109, 1113, was merely inadvertent, and is not to be held as in conflict with the present opinion.

It results that the judgment of the court below must be reversed, and judgment entered here in favor of the plaintiff in error on the merits of the cause, and for the costs.