# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 20, 2016 Session

## JOSEPHINE PHELPS, ET AL. v. VERN BENKE, JR.

**Appeal from the Chancery Court for Davidson County**
**No. 13283I   Claudia Bonnyman, Chancellor**
_____

**No. M2015-02212-COA-R3-CV – Filed January 11, 2017**
_____

The appellants Josephine Phelps and Roy Smith (the "Appellants") filed suit to assert rights to a tract of real property by adverse possession. On appeal, they claim that the trial court erred in concluding that they have no possessory rights to the land at issue. In part, they argue that the appellee's counterclaim for ejectment was untimely because it was not filed within seven years of the beginning of their adverse possession. We disagree and conclude that the trial court was correct in ordering the Appellants to vacate the disputed property. The Appellants' petition for adverse possession was filed before they had adversely possessed the property for a total of seven years. Moreover, pursuant to Tennessee Code Annotated section 28-1-114, the appellee's counterclaim for ejectment related back to the filing of the Appellants' original petition. We accordingly affirm the judgment of the trial court and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and KENNY ARMSTRONG, JJ., joined.

Jean Dyer Harrison and William G. Wojcik, Nashville, Tennessee, for the appellants, Josephine Phelps and Roy Smith.

Michele McGill, Franklin, Tennessee, and  Keith H. Solomon, Brentwood, Tennessee, for the appellee, Vern Benke, Jr.

## OPINION

## Background and Procedural History

This appeal stems from a bench trial regarding competing claims to a parcel of real property in Davidson County, Tennessee. The tract at issue contains a barn and consists of 3.0 acres of land (the "Barn Property"). It is located municipally at 3437 Smith Springs Road in Antioch, Tennessee, and is adjacent to another parcel of land that contains a house (the "House Property"). The House Property consists of 2.9 acres and is located municipally at 3328 Smith Springs Road. At one time, the Barn Property and House Property were part of a single tract of land.

By the 1980s, the land consisting of the Barn Property and House Property was owned by Virgie Alcorn. In 1984, Ms. Alcorn sold the Barn Property to Vern and Linda Benke. Although Ms. Alcorn retained ownership of the House Property incident to this transaction, the Benkes were granted an easement over the House Property for ingress and egress. Moreover, the Benkes entered into a lease purchase agreement concerning the remaining 2.9 acres containing the house. Ms. Alcorn would later sell the House Property to the Benkes in March 1986.

In 2004, the Benkes purportedly took out a loan from IndyMac Bank in the amount of $244,000.00. To secure the monetary obligations under the loan, a deed of trust was executed on the House Property only in favor of IndyMac Bank. Ms. Benke died unexpectedly a few short months later in February 2005. Foreclosure proceedings would eventually ensue regarding the House Property.

According to Mr. Benke, he was not aware that a deed of trust had been placed on the House Property until after his wife's passing. However, notwithstanding his claim that the mortgage on the House Property had been taken out by his deceased wife without his knowledge, Mr. Benke did not take any action to set the deed of trust aside. He testified that, following his wife's death, he vacated both the Barn Property and House Property after the end of the 2005 winter. Mr. Benke claimed that he did not think about the Barn Property again until 2014, when a realtor contacted him and stated that she had an interested buyer for the property.

On January 22, 2007, the Appellants purchased the House Property through the substitute trustee appointed by IndyMac Bank. Although the record reflects that the Appellants own approximately twenty properties as part of their rental property business, it is undisputed that they did not perform a survey prior to closing on the House Property. Notwithstanding their belief that they had bought the Barn Property in addition to the

House Property at the foreclosure, the substitute trustee's deed contained the following metes and bounds description of the property that was purchased:

> Beginning at a point in the centerline of Smith Springs Road, said point being 30 feet south of the southwest corner of an 50 feet easement for ingress and egress and the southeast corner of parcel 6; thence N 10 degrees 07 minutes E470.56 feet to a point, thence N 79 degrees 53 minutes W 335.32 feet to a point; thence S 10 degrees 07 minutes W 85.74 feet to a point; thence N 79 degrees 53 minutes W 84.0 feet to a point; thence S 10 degrees 07 minutes W 392.50 feet to a point in the centerline of Smith Springs Road; thence with said center line N 78 degrees 08 minutes W 251.45 feet to the point of beginning.

This legal description is a description of the land contained *only* within the House Property.

The Appellants moved onto the House Property within a few weeks after their purchase at foreclosure in January 2007. They made improvements to the house but also performed upkeep on the adjacent Barn Property. In addition to keeping horses on the Barn Property, the Appellants repaired fencing, mowed the grass, and sprayed for pests such as termites and hornets. The Appellants also paid taxes on the Barn Property.

On March 5, 2013, the Appellants filed a petition in the Davidson County Chancery Court asserting a claim for adverse possession and seeking a judgment for fee simple ownership of the Barn Property. The petition stated that because efforts to locate Mr. Benke had failed, he should be served by publication. An order of publication was subsequently entered by the Chancery Court, and on May 7, 2013, the Appellants filed a motion for default judgment. Therein, the Appellants stated that publication ran in *The Tennessean* on four dates in March and April 2013, the last of which was April 5, 2013. Because Mr. Benke had failed to plead or otherwise defend the lawsuit within thirty days of the last date of publication, the Appellants asserted that an order of default judgment should be entered in their favor, quieting title to the Barn Property. A final judgment was later entered in the case on April 4, 2014, wherein the Appellants' motion for default judgment was granted.

On June 9, 2014, Mr. Benke filed a motion to set the default judgment aside. The motion was supported by a memorandum of law, wherein Mr. Benke claimed that through "no purposeful avoidance or neglect," he had previously been unaware of any litigation concerning the property. Although the Appellants opposed Mr. Benke's motion, the Chancery Court set the default judgment aside by order entered on July 31, 2014.

On January 7, 2015, the Appellants filed an amended complaint,[1] as well as a motion for a temporary restraining order. In their motion for a restraining order, the Appellants submitted that Mr. Benke was actively attempting to sell the property at issue and argued that he should be restrained from doing so without first resolving the underlying merits of the lawsuit. On January 8, 2015, the Chancery Court entered an order denying the Appellants' request for a temporary restraining order. In support of its decision, the Chancery Court noted that the Appellants had not demonstrated a likelihood of success on the merits nor provided Mr. Benke with proper notice of their motion. Although a hearing was later set on the Appellants' application for a temporary injunction regarding the property at issue, no order was ever specifically entered on this matter.

On January 22, 2015, Mr. Benke filed an answer to the amended complaint, as well as counterclaims to quiet title and for ejectment. Shortly thereafter, on February 2, 2015, the Appellants filed an answer to Mr. Benke's counterclaims. In their answer, the Appellants contended that Mr. Benke was not entitled to any relief due to their alleged actions of adversely possessing the disputed property for more than seven years.

On February 10, 2015, the Appellants filed a motion to amend their answer to Mr. Benke's counterclaims. Specifically, the motion requested that they be allowed to amend their answer to assert the affirmative defense of laches. An amended answer asserting this defense was never filed, nor did the trial court ever enter an order permitting such an amendment. Although the record indicates that the Appellants submitted a draft order to the Chancery Court in August 2015 that proposed that their motion to amend be granted, the prepared order was specifically marked as "Not Entered" by the Chancellor presiding over the case.

A bench trial was held by the Chancery Court on June 24, 2015. At the conclusion of trial, the Chancery Court issued an oral ruling concluding that the Appellants did not have any possessory rights to the Barn Property. Its specific findings were later memorialized in an "Order and Final Judgment" entered on July 28, 2015. In pertinent part, the trial court's July 28 judgment concluded as follows:

1. What property did the [Appellants] buy at the foreclosure sale?

    Finding: [The Appellants] bought [the House Property]. [The Barn Property] was not included in the foreclosure.

---

[1] For the sake of clarity, we note that the styling of this pleading differed from the Appellants' initial filing insofar as the initial pleading was denominated as a "petition."

2. Which parties have colorable title to [the Barn Property]?

   Finding: Mr. Benke has a deed to [the Barn Property]. He has colorable title and is the only party with colorable title to [the Barn Property].

3. Have the [Appellants] had open and notorious possession of [the Barn Property] and what is their burden of proof?

   Finding: The [Appellants] did have open and notorious possession. This was proved by maintenance of the fence and use of the property by keeping horses on it and storing of their personal property in the barn

4. Have the [Appellants] had open and notorious possession of the property for seven years so that T.C.A. 28-2-103 protects them from Mr. Benke's counterclaim?

   Finding: [The Appellants] did not have possession of [the Barn Property] for the duration of seven years before they filed their lawsuit.

5. Do the [Appellants] have rights under T.C.A. 28-2-103?

   Finding: Because the suit was filed in March 2013, and their possession began in January 2007, they have only possessed the property in question for six years and three months and Mr. Benke's counterclaim is effective against them.

6. At the conclusion of this lawsuit, what property rights do the [Appellants] have to [the Barn Property]?

   Finding: The [Appellants] do not have colorable title nor do they have protection from the Defendant's counterclaim for possession.

7. What rights does Mr. Benke own to [the Barn Property]?

   Finding: Mr. Benke is the titleholder and owner of [the Barn Property] and has possessory rights in it. His counterclaim for ejectment is not barred.

8. Do[] the [Appellants] have the right to possess [the Barn Property] under T.C.A. 28-2-103?

Finding: No, they do not have adverse possession rights to [the Barn Property].

9. Can Mr. Benke eject the [Appellants] from [the Barn Property] and retain possession for himself?

Finding: Yes, there is no impediment to ejection of the [Appellants] from [the Barn Property]. Mr. Benke has a right to immediate possession of [the Barn Property] and the barn.

Following the entry of the Chancery Court's July 28 judgment, Mr. Benke filed a motion to recover certain discretionary costs. Although both parties suggest that the trial court granted this motion in Mr. Benke's favor, the record is devoid of an order relating to the motion.

On August 27, 2015, the Appellants filed a motion to alter or amend the July 28 judgment. Among other things, the Appellants asserted that Mr. Benke's claim for ejectment was barred by his laches. The Chancery Court denied the motion to alter or amend by order entered on October 7, 2015, and on November 5, 2015, the Appellants filed a notice of appeal. Subsequent to the filing of the notice of appeal, the Chancery Court entered an order staying its judgment pending appeal.

## Issues Presented

Restated verbatim from the Appellants' brief, the following issues are presented for our review:

1. Whether the Chancery Court erred in failing to apply the doctrine of laches to the facts of the instant case to bar the counterclaim of ejectment?

2. Whether the Chancery Court erred in finding that the late-filed counterclaim for ejectment was permitted by T.C.A. § 28-1-114?

3. Whether the Chancery Court erred in failing to strictly construe T.C.A. § 28-2-103 to require filing within seven years of the date of commencement of the adverse possession?

4. Whether the Chancery Court erred in finding that Mr. Benke established the elements necessary to prove entitlement to ejectment?

5. Whether the Chancery Court erred in finding that Mr. Smith and Ms. Phelps did not have color of title and were not entitled to title in the property pursuant to T.C.A. § 28-2-101 and T.C.A. § 28-2-102?

6. Whether the Chancery Court erred in finding Mr. Benke the prevailing party?

**Standard of Review**

The standards we employ to review the results of bench trials are well-settled. Our review is de novo upon the record, and we afford a presumption of correctness to the trial court's factual findings. Tenn. R. App. P. 13(d). "We will not disturb a trial court's finding of fact unless the evidence preponderates against its finding." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 527 (Tenn. Ct. App. 2011) (citation omitted). In order for the evidence to preponderate against a factual finding, it must support another finding with greater convincing effect. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). In contrast to our review of the trial court's factual findings, we afford no presumption of correctness to the trial court's legal conclusions. *In re Estate of Ledford*, 419 S.W.3d 269, 277 (Tenn. Ct. App. 2013) (citation omitted).

**Discussion**

*Rights to the Barn Property*

The Appellants' brief invites us to consider whether the trial court was correct in concluding that they have no possessory rights to the Barn Property. The Appellants' claim to the Barn Property is predicated on adverse possession. "Adverse possession is the possession of real property of another which is inconsistent with the rights of the true owner." *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). "In order to assert adverse possession, a party must demonstrate that her possession has been exclusive, actual, adverse, continuous, open, and notorious for the required period of time." *Id.* (citation omitted).

In this case, the Appellants have attempted to establish their right to possess the Barn Property through Tennessee Code Annotated section 28-2-101, Tennessee Code Annotated section 28-2-102, and Tennessee Code Annotated section 28-2-103. The Tennessee Supreme Court previously summarized these statutory forms of adverse possession in *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366 (Tenn. 2007), stating as follows:

> [L]imitations of real property actions, i.e., the statutory forms of adverse possession, are found in Tennessee Code Annotated sections 28-2-101

through 103. Initially, land granted by the state, for example, requires only a period of seven years' adverse possession under a recorded assurance or color of title, terms which are used interchangeably. Tenn. Code Ann. § 28-2-101 (2000); *see, e.g.*, *Slatton v. Tenn. Coal, Iron, & R.R. Co.*, 109 Tenn. 415, 75 S.W. 926, 927 (Tenn. 1902). . . . The limitations on actions statutes, described in Tennessee Code Annotated sections 28-2-102 and 103, are defensive only, barring only the remedy. *Kittel v. Steger*, 121 Tenn. 400, 117 S.W. 500, 503 (Tenn. 1909). These rights may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner. *Savely v. Bridges*, 57 Tenn. App. 372, 418 S.W.2d 472, 479 (Tenn. Ct. App. 1967). Tennessee Code Annotated section 28-2-102 provides a defense when there is assurance of title and seven years possession; this statute serves as protection as to the entire boundary as described. Section 28-2-103, which does not involve color of title, protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession. *Shearer v. Vandergriff*, 661 S.W.2d 680, 682 (Tenn. 1983).

*Id.* at 376 (internal footnotes omitted).

We begin our analysis by addressing the Appellants' contention that they are entitled to possession and/or ownership of the Barn Property by virtue of the authority in Tennessee Code Annotated section 28-2-101 and Tennessee Code Annotated section 28-2-102. Again, whereas the former statute "vests title in an adverse possessor who holds the real property by 'conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, . . .' after seven years of adverse possession," *Estate of Lamb v. Brinias*, No. E2013-01550-COA-R3-CV, 2014 WL 2999556, at *8 (Tenn. Ct. App. July 1, 2014) (quoting Tenn. Code Ann. § 28-2-101 (2000)), the latter statutory section merely provides a defense "when there is assurance of title and seven years possession." *Cumulus Broad., Inc.*, 226 S.W.3d at 376. Although Tennessee Code Annotated section 28-2-102 may only be used defensively, it is similar to Tennessee Code Annotated section 28-2-101 in that it provides relief to adverse possessors who have a proper assurance of title.

An assurance or color of title is "'something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used.'" *Id.* at 376 n.3 (quoting 10 Thompson on Real Property § 87.12, at 145 (David A. Thomas ed., 1994)). In order to provide proper color of title, the writing upon which color of title is predicated must contain a sufficient description of the land at issue. *See Vincent v. Johnston*, No. E2013-00588-COA-R3-CV, 2014 WL 279682, at *13 (Tenn. Ct. App. Jan. 24, 2014)

(citing *Turnage v. Kenton*, 102 Tenn. 328, 334 (1899)); *see also* 2 C.J.S. Adverse Possession § 108 ("To operate as color of title to land claimed under adverse possession, a deed must contain a sufficient description of the land."); *Slatton v. Tenn. Coal, Iron, & R.R. Co.*, 75 S.W. 926, 927 (Tenn. 1902) ("It is . . . held that a disseisor holds constructive possession of the whole tract only when his entry was under color of title by specific boundaries to the whole tract. The first requisite of such color of title as will give constructive possession to the claimant is, therefore, some definite description showing the extent of the claim, which, as to the part constructively possessed, may be said to perform the same office as acts of ownership upon the parts in actual possession."). Here, the trial court correctly determined that the Appellants did not hold color of title to the Barn Property. As already noted, the metes and bounds description of the property that the Appellants purchased at foreclosure was a description of the land contained solely within the House Property. The substitute trustee's deed did not contain any descriptive language indicating that the Barn Property was also being conveyed. We accordingly reject the Appellants' contention that they somehow had color of title to the Barn Property. As such, we further reject their assertion that either Tennessee Code Annotated section 28-2-101 or Tennessee Code Annotated section 28-2-102 would be available to provide any relief.

Color of title is not necessary, however, to assert a defense under Tennessee Code Annotated section 28-2-103. As we have already explained, that statute "protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession." *Cumulus Broad., Inc.*, 226 S.W.3d at 376 (citation omitted). Specifically, the statute provides as follows:

> (a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.
>
> (b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Tenn. Code Ann. § 28-2-103.

On appeal, the Appellants have raised several issues suggesting that Mr. Benke's counterclaim for ejectment was barred by this statute. They assert that his ejectment claim was untimely and contend that the trial court erred in concluding that Tennessee

- 9 -

Code Annotated section 28-1-114 was available to save it. Under that statute, "[a] counterclaim . . . or cross-claim is not barred by the applicable statute of limitations or any statutory limitation of time . . . if it was not barred at the time the claims asserted in the complaint were interposed." Tenn. Code Ann. § 28-1-114(a). Among other things, the Appellants argue that the provisions of Tennessee Code Annotated section 28-1-114 are unavailable to ejectment actions. In addition to their grievances concerning the applicability of Tennessee Code Annotated section 28-1-114, however, the Appellants maintain that Mr. Benke failed to make out a proper case for ejectment. For the reasons that follow, we reject each of these contentions.

Although the trial court found that the Appellants had possessed the Barn Property openly and notoriously, it noted that the duration of such possession did not total seven years as of the date on which they filed their original petition. There is no question about this fact. The foreclosure sale of the House Property occurred in January 2007. Even accepting the trial court's finding that the Barn Property was adversely possessed from that time onward, it is clear that seven years of possession by the Appellants had not elapsed by the time their original petition was filed in March 2013. Although Mr. Benke's counterclaim for ejectment was not filed within seven years of the commencement of the Appellants' adverse possession, it was nonetheless effective to counteract their claim for possession. Indeed, the ejectment claim was not barred when the Appellants' original claims were interposed. *See* Tenn. Code Ann. § 28-1-114. We accordingly disagree that the counterclaim was untimely. Further, we reject the Appellants' suggestion that Tennessee Code Annotated section 28-1-114 is not available to actions for ejectment.

In reaching these conclusions, we observe that we have already addressed similar questions in *Cross v. McCurry*, 859 S.W.2d 349 (Tenn. Ct. App. 1993), wherein we determined that Tennessee Code Annotated section 28-1-114 could be utilized to prosecute claims filed outside the seven-year period in Tennessee Code Annotated section 28-2-103. The *Cross* case involved a dispute among the Cross family, the McCurry family, and one Herbert Hobbs. The pertinent facts in the case trace back to a time when the McCurrys and Mr. Hobbs were adjoining landowners. In 1984, Mr. McCurry constructed a building that encroached on Mr. Hobbs's property. *Id.* at 351. A few years later, in 1988, the McCurrys sold their property to the Crosses. *Id.* The Crosses were initially unaware of the encroachment posed by the building that Mr. McCurry had constructed; however, in March 1990, Mr. Hobbs informed them that the building was partially on his property. *Id.* Litigation soon ensued. The Crosses filed suit against Mr. Hobbs and the McCurrys in October 1990, asserting, *inter alia*, that Mr. Hobbs had knowledge of the encroachment and had failed to take timely and appropriate measures to correct the situation. *Id.* After filing an answer that asserted that the Crosses "knew or should have known the location of the true boundary lines of their property,"

Mr. Hobbs would eventually file a counterclaim and cross-claim against the Crosses and McCurrys in April 1992. *Id.* at 351, 353. In turn, the McCurrys alleged that Mr. Hobbs's action was barred by the statute of limitations. *Id.* at 352.

In reviewing the statute of limitations issue on appeal, this Court concluded that the applicable statute of limitations was provided by Tennessee Code Annotated section 28-2-103. *Id.* As we have already detailed, that statute provides that no person "shall have any action, either at law or in equity, for the recovery of any lands . . . but within seven (7) years after the right of action accrued." Tenn. Code Ann. § 28-2-103. Despite our acknowledgment in *Cross* that Mr. Hobbs's claims had been asserted outside of this seven-year period, we concluded that they were timely when given the benefit of Tennessee Code Annotated section 28-1-114. *Cross*, 859 S.W.2d at 353. In relevant part, we explained as follows:

> The record shows the construction of the encroaching building began in the spring of 1984 and was completed before the end of the year. This suit was begun with the filing of the Crosses' complaint in October, 1990. Mr. Hobbs did not file his counter complaint and cross claim until April, 1992, but he is given the benefit of the Crosses' October, 1990, filing pursuant to T.C.A. § 28-1-114. Mr. Hobbs' claims are, therefore, not barred by T.C.A. § 28-2-103, although they were asserted outside of the applicable seven-year period within the statute.

*Id.* The Appellants' protestations aside, this precedent makes it clear that a counterclaim may receive the benefit of Tennessee Code Annotated section 28-1-114 in order to escape the bar that would ordinarily be imposed by Tennessee Code Annotated section 28-2-103.

In their brief on appeal, the Appellants cite a portion of the legislative discussion surrounding the enactment of the bill that would later become Tennessee Code Annotated section 28-1-114. In pertinent part, the legislative discussion relied upon is as follows:

> REPRESENTATIVE BUSSARD: Mr. Speaker and Members of the House, this bill just allows that if a suit is filed on the last day of the statute of limitations, a tort case or otherwise, it allows the person who is sued to bring any counterclaim that's involved in that same matter and it doesn't allow the statute of limitations to bar the counterclaim.
>
> . . . .

- 11 -

REPRESENTATIVE ASHFORD: Representative Bussard, how long does a person have to file this third-party counterclaim after the statute has run on the original claim?

REPRESENTATIVE BUSSARD: Representative Ashford, within the time allowed for a responsive pleading, which would be thirty days.

Although the Appellants purportedly reference this discussion in order to support their general assertion that Tennessee Code Annotated section 28-1-114 cannot apply to ejectment actions, their reference also appears to suggest, at least implicitly, that Tennessee Code Annotated section 28-1-114 only "saves" those counterclaims or third-party complaints submitted within thirty days of the filing of the plaintiff's complaint. Such a conclusion is not supported by the plain language of the statute. In opining on this issue, one federal district court noted as follows:

> Anderson cites [the legislative exchange between Representatives Bussard and Ashford] and asserts that § 28-1-114(a) extended the statute of limitations on the Hooper's third-party complaint no farther than the deadline for a responsive pleading.
>
> Anderson's argument contradicts the unambiguous language of the statute. Section 28-1-114(a) provides simply that a third-party complaint to which it applies "is not barred." Section 28-1-114(a) does not set a deadline before which the complaint must be filed. The comments of Representative Bussard meanwhile were made in regard to Senate Bill No. 1699 in its entirety. This bill contained the predecessor to § 28-1-114(b) as well as to § 28-1-114(a). Section 28-1-114(b) *does* expressly preserve only those claims asserted "within the time allowed for the filing of a responsive pleading." Representative Bussard's statements therefore are ambiguous. But the language of § 28-1-114(a) is not. This Court will not read into § 28-1-114(a) a limitation that is not there.

*Fed. Deposit Ins. Corp. v. Hooper*, 700 F.Supp. 915, 917 (M.D. Tenn. 1988).[2] *See also Daniels v. Wray*, No. M2008-01781-COA-R3-CV, 2009 WL 1438247, at *4, n.1 (Tenn. Ct. App. May 21, 2009) ("While appellee suggests the reason for this statute is to allow a counterclaim where a plaintiff waits until the last possible date to bring an action before

---

[2] Although the *Hooper* decision is certainly not binding on this Court, *see Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001) ("When a federal court undertakes to decide a state law question . . . the state courts are not bound to follow the federal court's decision."), we find that its observation about the plain language of Tennessee Code Annotated section 28-1-114 is both accurate and persuasive.

the statute expires, clearly [Tennessee Code Annotated section 28-1-114] is not limited to such theoretical facts.").

From our reading of *Cross* and the plain language of Tennessee Code Annotated section 28-1-114, it is clear that Mr. Benke's counterclaim for ejectment was timely. Notwithstanding the fact that his counterclaim was filed in January 2015, it received the benefit of the Appellants' original filing on March 5, 2013. *See Rayburn v. E.J. Constr. Eng'g, Inc.*, No. 03A01-9306-CV-00212, 1994 WL 27616, at *4 n.1 (Tenn. Ct. App. Feb. 3, 1994) (citing Tennessee Code Annotated section 28-1-114) ("[T]he filing date of a counter-complaint, for purposes of calculating the statute of limitations, is considered to be the same as the filing date of the original complaint."). The ejectment claim was clearly timely at that point because the Appellants had yet to adversely possess the Barn Property for a total of seven years. Given that the Appellants' possessory claim to the disputed property was not yet ripe, the trial court did not err in ultimately ordering them to vacate the property.

With respect to this latter point, we disagree with the Appellants' suggestion that Mr. Benke did not make out a valid claim for ejectment. In their brief on appeal, the Appellants cite to this Court's opinion in *Demarcus v. Campbell*, 65 S.W.2d 876 (Tenn. Ct. App. 1933), wherein we stated as follows:

> In an ejectment suit "the complainant must show a valid subsisting legal or equitable interest in the real property sued for, and the right to the immediate possession thereof; and, if the defendant is not in possession, must, also, show that he, the defendant, is claiming an interest therein, or was exercising acts of ownership thereon when the bill was filed."

*Id.* at 878 (quoting Gibson's Suits in Chancery, § 1047). The Appellants' position appears to be that Mr. Benke did not satisfy the second prong of this test from *Demarcus*, i.e., Mr. Benke allegedly did not claim an interest in the property or exercise any acts of ownership when his counterclaim was filed. By the very nature of filing his ejectment counterclaim, however, Mr. Benke was clearly asserting an interest in the property. In any event, we note, as does Mr. Benke, that pursuant to Tennessee Code Annotated section 29-15-102 "[a]ny person having a valid subsisting legal interest in real property, and a right to the immediate possession thereof, may recover the same by an action of ejectment." Tenn. Code Ann. § 29-15-102. Save for a conclusory assertion that Mr. Benke failed to prove that he was entitled to possession of the Barn Property, the Appellants' brief is devoid of any discussion regarding the actual merits of the ejectment claim. Regardless, the evidence adduced at trial established that Mr. Benke had title to the Barn Property and the corresponding right of immediate possession. The trial court did not err in failing to hold otherwise.

- 13 -

*Laches*

The Appellants also challenge the trial court's judgment by arguing that Mr. Benke's laches should have barred his claim. "An award based on laches is predicated on the trial court's finding of inexcusable, negligent, or unreasonable delay on the party asserting the claim which results in prejudice to the defending party." *Finova Capital Corp. v. Regel*, 195 S.W.3d 656, 660 (Tenn. Ct. App. 2005). Although the doctrine of laches typically applies to actions that are not governed by a statute of limitations, "it may be applied within a statutory limitations period in the case of gross laches." *Id.* (citation omitted).

It is clear from Rule 8.03 of the Tennessee Rules of Civil Procedure that laches is an affirmative defense that must be asserted in an appropriate pleading:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, ***laches***, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and other matter constituting an affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

Tenn. R. Civ. P. 8.03 (emphasis added). "Pleadings play an important role in litigation." *In re Estate of Baker v. King*, 207 S.W.3d 254, 265 (Tenn. Ct. App. 2006). "They provide the parties and the trial court with notice of the claims and defenses involved in the case." *Id.* (citation omitted).

In this case, the trial court did not rule on the issue of laches. The issue is not mentioned in its July 28, 2015 judgment, nor is it mentioned in its order denying the Appellants' motion to alter or amend. Because laches was not properly asserted as an affirmative defense in this case, we cannot fault the trial court in failing to rule on the issue. Although the Appellants moved to amend their answer to add laches as a defense during the course of the trial court proceedings, the record reveals that their motion was never granted. Accordingly, an amended answer asserting the defense was never filed.

As previously observed, although the record contains a draft order that the Appellants submitted to the trial court proposing that their motion to amend be granted,

the prepared order was specifically marked as "Not Entered" by the Chancellor presiding over the case. Although not technically a denial of their motion, this notation by the Chancellor indicates an apparent refusal to grant their motion to amend. There is no indication that the Appellants took further steps to have the trial court rule on their motion. Moreover, we observe that on appeal, no issue has been raised with respect to whether the trial court should have granted the motion to amend. Given these facts, we cannot fault the trial court for failing to rule on an affirmative defense that was never properly before the court in the case. Because the Appellants failed to raise laches as an affirmative defense as required, the defense is waived. *See Wilkinson v. Wilkinson*, No. W2012-00509-COA-R3-CV, 2013 WL 614708, at *4 (Tenn. Ct. App. Feb. 19, 2013) (citations omitted) ("[I]t is well-settled that a failure to comply with Rule 8.03 constitutes a waiver of the affirmative defense.").

### *Discretionary costs*

In addition to challenging the substantive merits of the trial court's analysis regarding possessory rights, the Appellants assert that Mr. Benke is not entitled to an award of discretionary costs. Although the parties' briefs suggest that the trial court ruled on Mr. Benke's motion for discretionary costs and awarded certain costs to him, no order was ever entered on this matter insofar as we can discern from the record transmitted to us on appeal. As such, the issue is not properly before us. It is important to note, however, that the absence of an order on Mr. Benke's motion for discretionary costs does not defeat our exercise of jurisdiction over this appeal. A final order does exist. *See Payne v. Tipton Cnty.*, 448 S.W.3d 891, 898 n.4 (Tenn. Ct. App. 2014) (citation omitted) (noting that a motion for discretionary costs filed after a final order does not arrest the finality of the trial court's judgment); *Roberts v. Roberts*, No. E2009-02350-COA-R3-CV, 2010 WL 4865441, at *8 (Tenn. Ct. App. Nov. 29, 2010) ("The retention of the issue of discretionary costs does not prevent the . . . judgment from being final for purposes of appeal.").

### *Mr. Benke's request for attorney's fees*

In closing, we observe that Mr. Benke's brief contains a request for an award of attorney's fees and costs pursuant to Tennessee Code Annotated section 27-1-122. Under that statute, this Court is entitled to "award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay." *Young v. Barrow*, 130 S.W.3d 59, 66 (Tenn. Ct. App. 2003). In this case, Mr. Benke's request for recovery under section 27-1-122 was presented in the argument section of his brief, but it was not presented as an issue for our review in compliance with Rule 27 of the Tennessee Rules of Appellate Procedure. As such, it is waived. *See Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (citation omitted) (noting that "[w]e may consider an issue

waived where it is argued in the brief but not designated as an issue").  Although Tennessee Code Annotated section 27-1-122 does allow appellate courts to award damages on their own motion, *see Whalum v. Marshall*, 244 S.W.3d 169, 180 (Tenn. Ct. App. 2006), we decline to do so in this case.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed jointly and severally against the Appellants, Josephine Phelps and Roy Smith, and their surety, for which execution may issue if necessary.  This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.


_____
ARNOLD B. GOLDIN, JUDGE